**John M. GAINOR, Appellee,**

**v.**

**Scott ROGERS; City of Moorhead, a Minnesota municipality; and John Doe, Appellants.**

**No. 91–1708.**

United States Court of Appeals, Eighth Circuit.

Submitted March 3, 1992.

Decided Aug. 20, 1992.

Rehearing and Rehearing En Banc Denied Oct. 9, 1992.

Barry P. Hogan, Moorhead, Minn., argued, for appellant.

Keith L. Miller, Moorhead, Minn., argued, for appellee.

Before LOKEN, Circuit Judge, LAY and HEANEY, Senior Circuit Judges.

LAY, Senior Circuit Judge.

This is an appeal from the district court's[1] denial of a motion for summary judgment for claims brought against the defendant, police officer Scott Rogers, under 42 U.S.C. § 1983 (1988), for false arrest, use of excessive force, and violation of his First Amendment rights. Rogers sought summary judgment on the ground of qualified immunity. The district court determined that genuine issues of material fact existed and denied the motion.[2] We affirm the judgment of the district court.

BACKGROUND

On the afternoon of March 24, 1989, John Michael Gainor was observed by Officer Rogers carrying a twelve-foot by six-foot wooden cross[3] through downtown Moorhead, Minnesota and distributing leaflets. Gainor was walking with a companion, Todd Dittmer. Rogers claims to have approached the two men because he suspected Gainor might be intoxicated, soliciting, begging,[4] obstructing traffic or otherwise creating a public nuisance. When questioned, Gainor informed Rogers of his walking ministry and his personal quest to carry the cross along the border of the United States to spread his religious message. After obtaining one of Gainor's leaflets, Rogers asked if Gainor was an ordained minister. Gainor responded affirmatively, and Rogers then asked for identification. Gainor pulled out a copy of the United States Constitution and informed

---

1. The Honorable David S. Doty, United States District Judge for the District of Minnesota.

2. The court also granted the plaintiff's motion to amend his complaint to include Sergeant Gerald Minnie, and Officers Bryce Forsythe and Kent McCullough. The court stayed the effect of that order, however, until after this appeal. The notice of appeal by Rogers was filed on March 7, 1991. The filing of the amended complaint and service of process on the other officers took place on April 1, 1991. Thus, we find no lack of finality in Rogers' appeal.

3. Gainor carried the cross, which was mounted on a wheel, such that the length of the cross extended directly behind him while the width of the cross was angled diagonally away from the street rather than horizontally extending on either side of him.

4. Rogers does not claim that his confrontation with Gainor confirmed any of his suspicions with respect to public intoxication, soliciting, or begging, and indeed the record does not provide any support for these allegations.

Rogers that he had the constitutional right not to produce identification.

Gainor and Rogers entered into a debate about Gainor's right to withhold identification. Gainor eventually requested that Rogers contact his supervisor. Rogers radioed for assistance, and Sergeant Minnie and Officers Forsythe and McCullough arrived shortly. Gainor claims that the officers threatened to arrest him if he did not produce identification. Although the defendants dispute this allegation, Gainor's companion, Dittmer, was allowed to leave after he acceded to the officers' requests for identification. Gainor was placed under arrest and forced into a police car.

The manner in which Gainor was arrested is hotly disputed. Gainor claims that he suffered facial abrasions and injuries to his wrist and knee when the officers, without provocation, threw him to the ground, twisted his arms, and kneeled on his back and legs to handcuff him. The officers contend that the level of force used to handcuff Gainor was reasonable because Gainor physically resisted arrest. Gainor was formally charged with disorderly conduct and obstruction of the legal process. Those charges were later dropped and this suit followed.

Gainor's complaint alleged that the defendant officers lacked probable cause to arrest him, that they used excessive force in facilitating his arrest, and that his First Amendment rights of free exercise of religion and free speech were violated by his warrantless arrest. After a period of discovery, the defendants moved for summary judgment based on qualified immunity from suit.[5] The district court denied defendants' motion, finding issues of material fact with respect to each of the remaining claims.[6]

**5.** The City of Moorhead, an original named defendant in this suit, moved for summary judgment at this time as well. The district court granted the city's motion seeking dismissal from this suit. Gainor does not appeal the city's dismissal.

**6.** The district court granted summary judgment to defendant Rogers on Gainor's claim that Rogers did not have a right to stop and question

## DISCUSSION

■ It is well settled that the denial of a summary judgment motion which asserts qualified immunity from suit is appealable "to the extent that it turns on an issue of law...." *Mitchell v. Forsyth*, 472 U.S. 511, 530, 105 S.Ct. 2806, 2817, 86 L.Ed.2d 411 (1985); *see also Johnson v. Hay*, 931 F.2d 456, 459 (8th Cir.1991); *Wright v. South Arkansas Regional Health Center*, 800 F.2d 199, 202 (8th Cir.1986).

■ We note further that the purpose of the qualified immunity defense for a state official is to shield a government official from *suit* rather than merely to serve as a defense to liability. *Mitchell v. Forsyth*, 472 U.S. at 526, 105 S.Ct. at 2815. Where the defense of qualified immunity is raised to an allegation of illegal arrest under the Fourth Amendment, the focal issue is the objective reasonableness of the officer making the arrest, even though probable cause to arrest is lacking. *Gorra v. Hanson*, 880 F.2d 95, 97 (8th Cir.1989). The test is "whether a reasonable officer could have believed [the arrest] to be lawful, in light of clearly established law and the information the [arresting] officers possessed." *Anderson v. Creighton*, 483 U.S. 635, 641, 107 S.Ct. 3034, 3040, 97 L.Ed.2d 523 (1987).

The district court denied the motion for summary judgment on the defense of qualified immunity by reasoning that a dispute of material fact existed for a jury to determine concerning whether Rogers reasonably believed he had probable cause to arrest the plaintiff. Reviewing a denial of a summary judgment on the basis of qualified immunity, the Ninth Circuit, in *Bryant v. United States Treasury Dep't*, 903 F.2d 717 (9th Cir.1990), similarly reasoned that whether an officer reasonably believed he or she had probable cause to make an

him. Citing *Florida v. Royer*, 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983), the district court found that the investigatory stop did not implicate the Fourth Amendment, since such a stop does not require reasonable articulable suspicion, but constitutes only an unprotected consensual encounter. This order was not appealed.

arrest was a question of fact for the jury unless there was only one reasonable conclusion for a jury to find. The Supreme Court reversed, however, stating:

> This statement of law is wrong for two reasons. First, it routinely places the question of immunity in the hands of the jury. Immunity ordinarily should be decided by the court long before trial. Second, the court should ask whether the agents acted reasonably under settled law in the circumstances, not whether another reasonable, or more reasonable, interpretation of the events can be construed five years after the fact.

*Hunter v. Bryant*, —— U.S. ——, ——, 112 S.Ct. 534, 537, 116 L.Ed.2d 589 (1991) (citation omitted).

Qualified immunity is best understood by reference to the basic analysis offered by *Mitchell v. Forsyth*, 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). There the Court made clear that the issue on qualified immunity is separate from the merits. The issue on the merits is whether the officer *violated the law* when the arrest was made, whereas the immunity question is whether the officer *violated clearly established law* when the arrest was made.

In discussing the appealability of an interlocutory decision denying a motion for summary judgment based on qualified immunity, the Court in *Mitchell* observed:

> Such a decision is "conclusive" in either of two respects. In some cases, it may represent the trial court's conclusion that even if the facts are as asserted by the defendant, the defendant's actions violated clearly established law and are therefore not within the scope of the qualified immunity. In such a case, there will be nothing in the subsequent course of the proceedings in the district court that can alter the court's conclusion that the defendant is not immune. Alternatively, the trial judge may rule only that if the facts are as asserted by the plaintiff, the defendant is not immune. At trial, the plaintiff may not succeed in proving his version of the facts, and the defendant may thus escape liability. *Even so, the court's denial of summary judgment finally and conclusively determines the defendant's claim of right not to stand trial on the plaintiff's allegations, and because "[t]here are simply no further steps that can be taken in the District Court to avoid the trial the defendant maintains is barred,"* it is apparent that *"Cohen*'s threshold requirement of a fully consummated decision is satisfied" in such a case.

*Mitchell,* 472 U.S. at 527, 105 S.Ct. at 2816 (quoting *Abney v. United States,* 431 U.S. 651, 659, 97 S.Ct. 2034, 2040, 52 L.Ed.2d 651 (1977)) (emphasis added).

Thus, the only concern on appeal from a denial of summary judgment based on qualified immunity is whether a defendant is immune from trial. This issue is ordinarily one of law and not for a jury to determine. *Hunter v. Bryant,* —— U.S. ——, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991). *Mitchell* once again makes clear what the court's objective analysis should be on such a motion:

> Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery. Even if the plaintiff's complaint adequately alleges the commission of acts that violated clearly established law, *the defendant is entitled to summary judgment if discovery fails to uncover evidence sufficient to create a genuine issue as to whether the defendant in fact committed those acts.* *Harlow* thus recognized an entitlement not to stand trial or face the other burdens of litigation, conditioned on the resolution of the essentially legal question whether the conduct of which the plaintiff complains violated clearly established law.

*Mitchell,* 472 U.S. at 526, 105 S.Ct. at 2815 (citation omitted) (emphasis added).

In reviewing the denial of the summary judgment on the defense of qualified immunity, Justice White outlined the role of the appellate court:

> An appellate court reviewing the denial of the defendant's claim of immunity need not consider the correctness of the

plaintiff's version of the facts, nor even determine whether the plaintiff's allegations actually state a claim. *All it need determine is a question of law*: whether the legal norms allegedly violated by the defendant were clearly established at the time of the challenged actions or, in cases where the district court has denied summary judgment for the defendant on the ground that even under the defendant's version of the facts the defendant's conduct violated clearly established law, whether the law clearly proscribed the actions the defendant claims he took. To be sure, the resolution of these legal issues will entail consideration of the factual allegations that make up the plaintiff's claim for relief; the same is true, however, when a court must consider whether a prosecution is barred by a claim of former jeopardy or whether a Congressman is absolutely immune from suit because the complained of conduct falls within the protections of the Speech and Debate Clause.

*Mitchell*, 472 U.S. at 528, 105 S.Ct. at 2816 (footnote omitted) (emphasis added).

This same approach is found in *Anderson v. Creighton*, where the Court observed:

> Thus, on remand, it should first be determined whether the actions the Creightons allege Anderson to have taken are actions that a reasonable officer could have believed lawful. If they are, then Anderson is entitled to dismissal prior to discovery. If they are not, *and if the actions Anderson claims he took are different from those the Creightons allege (and are actions that a reasonable officer could have believed lawful), then discovery may be necessary before Anderson's motion for summary judgment on qualified immunity grounds can be resolved.* Of course, any such discovery should be tailored specifically to the question of Anderson's qualified immunity.

*Anderson*, 483 U.S. at 646 n. 6, 107 S.Ct. at 3042 n. 6 (citation omitted) (emphasis added).

 It is important to recognize that in evaluating qualified immunity under a motion for summary judgment the court must examine the information possessed by the officials. This does not mean reopening an inquiry into the official's subjective intent. *See Harlow v. Fitzgerald*, 457 U.S. 800, 815–20, 102 S.Ct. 2727, 2736–39, 73 L.Ed.2d 396 (1982). As the Court pointed out in *Anderson v. Creighton*:

> The relevant question in this case, for example, is the objective (albeit fact-specific) question whether a reasonable officer could have believed Anderson's warrantless search to be lawful, in light of clearly established law and the information the searching officers possessed. Anderson's subjective beliefs about the search are irrelevant.[7]

*Anderson*, 483 U.S. at 641, 107 S.Ct. at 3040. The above question is, of course, the legal issue that the court must resolve. This is an objective question considering the totality of the circumstances existing on the record at that time. If the facts are found to be undisputed, then the court must determine whether a reasonable officer could have believed that his conduct was lawful *in light of clearly established law*. The touchstone of this analysis is the latter phase. This allows ample room for a good faith mistake by the officer since his conduct must be measured in terms of the belief of a reasonable officer based upon the facts then available to the officer. Obviously, an official cannot merely articulate beliefs or suspicions which have no factual foundation. An officer, for example, could not claim qualified immunity based upon mere suspicion that normal conduct of a citizen indicated to the officer that the individual might be a drug courier. However, if the officer asserted conduct which would give rise to probable cause, this would, if undisputed, provide a defense of qualified

---

**7.** The dissent wrongly emphasizes the officer's subjective belief that the plaintiff may have been soliciting. The issue is not what the officer may have believed, but whether under the objective facts and circumstances existing a reasonable officer could have believed the plaintiff was soliciting. The constitutional right in passing out religious leaflets does not in this court's judgment constitute grounds of reasonable suspicion of solicitation.

immunity. However, if the plaintiff contested the officer's observation and offered a factual account which would not justify a reasonable officer to make an arrest, then a material dispute of fact would exist.

Where a genuine issue of fact surrounds the question of the plaintiff's conduct, the trial court must determine whether the "evidence [is] sufficient to create a genuine issue as to whether the defendant in fact committed the acts." *Mitchell,* 472 U.S. at 526, 105 S.Ct. at 2815. Once a genuine issue of material fact is found to exist, the defense of qualified immunity shielding the defendant from trial must be denied. The cases are legion in this and other circuits which establish that where there are genuine issues of material fact surrounding an arrestee's conduct it is impossible for the court to determine, as a matter of law, what predicate facts exist to decide whether or not the officer's conduct clearly violated established law. For example, in *Duncan v. Storie,* 869 F.2d 1100 (8th Cir.1989), *cert. denied,* 493 U.S. 852, 110 S.Ct. 152, 107 L.Ed.2d 110 (1989), the issue was whether the plaintiff's arrest occurred inside or outside his home. If the facts were as the defendant officer alleged, that the plaintiff voluntarily placed himself in a public place, he would have relinquished the expectation of privacy to which he was entitled within his home. The dispute of material fact caused us to affirm the denial of the motion for summary judgment based on qualified immunity. *See also Wagenmann v. Adams,* 829 F.2d 196, 206 (1st Cir.1987) (factual dispute regarding possession of vehicle registration certificate at time of arrest must be sent to jury to "assess the credibility of witness and to resolve inconsistencies in the evidence."); *Wilson v. Attaway,* 757 F.2d 1227, 1236 (11th Cir.1985).

Using the analytical approach outlined in these cases, we initially look to Gainor's amended complaint which alleges in part as follows:

6. On Good Friday, March 24, 1989, Plaintiff and a friend were walking in an easterly direction on the sidewalk on the northside in the 800 block of Center Avenue in Moorhead. Plaintiff was carrying a wooden cross with him as he walked.

7. At approximately 3:00 p.m. on the above date, Rogers, wearing the uniform of a City of Moorhead police officer, approached Plaintiff and his friend and asked where they were going.

8. Plaintiff informed Rogers he was walking around the country with his cross and preaching the Gospel of Jesus.

9. Rogers requested Plaintiff to produce identification.

10. Plaintiff then asked Rogers if he was breaking any laws or suspected of breaking any laws. Rogers responded that he was not. At that point Plaintiff stated he should not be required to produce identification due to the 4th Amendment to the U.S. Constitution.

11. Rogers continued to demand identification from Plaintiff and Plaintiff refused to produce identification.

12. Rogers had also radioed for assistance and shortly thereafter Doe arrived at the scene.

13. Rogers told Plaintiff his failure to produce identification made him guilty of vagrancy and Rogers also indicated Plaintiff was guilty of solicitation and threatened to arrest Plaintiff if his demands for identification were not met.

14. Plaintiff denied he was either a vagrant or soliciting and still refused to produce identification. Rogers and Doe then converged on Plaintiff, violently grabbed him, tackled him, threw him face-down on the pavement, forcibly handcuffed him and placed him under arrest.

15. Rogers and Doe then picked Plaintiff up, ransacked his pockets and wallet and took him to jail.

16. Shortly thereafter, Plaintiff was released from jail on his own recognizance.

17. Plaintiff appeared in court on March 27, 1989, and pleaded innocent to the charges filed against him. All

charges were dropped later that same day.

Appellant's App. at 186–87.

■ In the present case, although the plaintiff was charged with violation of two misdemeanors,[8] it is now urged on the petition for rehearing that the officer had a right to demand identification of Gainor under Minn.Stat. § 609.506 (1988). The latter law makes it unlawful for an individual to give an officer a false name or information during an arrest or during an investigative stop.[9]

In *Brown v. Texas*, 443 U.S. 47, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979), the Court held unlawful the arrest of a suspicious looking man in an alley. The Court observed that "[t]he flaw in the State's case is that none of the circumstances preceding the officers' detention of appellant justified a reasonable suspicion that he was involved in criminal conduct." *Id.* at 51–52, 99 S.Ct. at 2641. The Court further reasoned:

> The Texas statute under which appellant was stopped and required to identify himself is designed to advance a weighty social objective in large metropolitan cen-

ters: prevention of crime. But even assuming that purpose is served to some degree by stopping and demanding identification from an individual without any specific basis for believing he is involved in criminal activity, the guarantees of the Fourth Amendment do not allow it. When such a stop is not based on objective criteria, the risk of arbitrary and abusive police practices exceeds tolerable limits.[10]

*Id.* at 52, 99 S.Ct. at 2641.

When examining the plaintiff's allegations and the evidentiary support contained in the depositions, we find plaintiff's allegations sufficiently supported by the record to overcome Officer Rogers' defense that a reasonable officer could believe the arrest was lawful. Plaintiff's testimony as well as that of his companion, Dittmer, lend sufficient support that Gainor was not guilty of any disorderly conduct and that he was merely "walking around the country with his cross and preaching the Gospel of Jesus." Amended Complaint, Appellant's App. at 186. This conduct, if true, does not give rise to reasonable suspicion

---

**8.** Gainor was charged with disorderly conduct in violation of Minn.Stat. § 609.72 (1988), and obstruction of legal process in violation of Minn.Stat. § 609.50 (1988). Both charges were later dismissed. Minn.Stat. § 609.72 provides:

> Subdivision. 1. Whoever does any of the following in a public or private place, knowing, or having reasonable grounds to know that it will, or will tend to, alarm, anger or disturb others or provoke an assault or breach of the peace, is guilty of disorderly conduct, which is a misdemeanor:
> (1) Engages in brawling or fighting; or
> (2) Disturbs an assembly or meeting, not unlawful in its character; or
> (3) Engages in offensive, obscene, or abusive language or in boisterous and noisy conduct tending reasonably to arouse alarm, anger or resentment in others.

Minn.Stat. § 609.50 provides:

> Whoever intentionally obstructs, hinders, or prevents the lawful execution of any legal process, civil or criminal, or apprehension of another on a charge or conviction of a criminal offense or obstructs, resists, or interferes with a peace officer while the officer is engaged in the performance of official duties, or by force or threat of force endeavors to obstruct any employee of the department of revenue while the employee is lawfully engaged in the performance of official duties for

the purpose of deterring or interfering with the performance of those duties, may be sentenced as follows:
> (1) if the act was accompanied by force or violence or the threat thereof, to imprisonment for not more than one year or to payment of a fine of not more than $3,000, or both; or
> (2) in other cases to imprisonment for not more than 90 days or to payment of a fine of not more than $700, or both.

**9.** This statute was not raised in the district court or in the appellant's brief. Ordinarily, we will not consider issues not raised in the district court but under the present disposition of the case we find the defendant's claim irrelevant. Rogers does not claim that Gainor provided a false name or false information.

**10.** The Court left open the question "whether an individual may be punished for refusing to identify himself in the context of a *lawful* investigatory stop which satisfies Fourth Amendment requirements." *Brown,* 443 U.S. at 53 n. 3, 99 S.Ct. at 2641 n. 3 (citing *Dunaway v. New York,* 442 U.S. 200, 210 n. 12, 99 S.Ct. 2248, 2255 n. 12, 60 L.Ed.2d 824 (1979); *Terry v. Ohio,* 392 U.S. 1, 34 (1968) (White, J. concurring)) (emphasis added).

of criminal conduct. *Brown*, 443 U.S. at 51, 99 S.Ct. at 2641.

▉▉▉▉▉ Officer Rogers disputes Gainor's factual claim. Rogers now asserts that Gainor was obstructing pedestrian traffic in a manner which gave rise to a suspicion of intoxication.[11] The depositions show, as the district court observed, that the arrest did not take place until Rogers' supervisors were called and Gainor refused to produce his identification. These factual issues give rise to a factual dispute *on the merits* as to whether Rogers had probable cause to arrest Gainor. Officer Rogers' testimony as to the facts he had in his possession, however, is to be evaluated under the *Mitchell* standard in passing on the issue of qualified immunity. Thus, applying the teachings of *Mitchell* and *Anderson*, we initially need only look to plaintiff's allegations to determine whether a reasonable officer could believe that the arrest was lawful under principles of clearly established law. As indicated, this analysis is to be done without any attempt to verify the correctness of plaintiff's complaint. *Mitchell*, 472 U.S. at 528, 105 S.Ct. at 2816. If the court is satisfied that a reasonable officer would or should have known that he or she was violating well established law, discovery may proceed to enable the defense to show that plaintiff's allegations are not supported by factual evidence. In the present case, we find plaintiff's factual allegations, although disputed, sufficiently supported by evidentiary proof. If these allegations are true, we think it clear that the allegations support a charge that a reasonable officer, in making the arrest, would or should have known

that he was violating clearly established law. It is fundamental that an arrest violates the Fourth Amendment when there exists no reasonable suspicion or probable cause that an individual is engaged in criminal activity. *See Brown v. Texas*, 443 U.S. 47, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979). It is also fundamental that a lawful arrest may not ensue where the arrestee is merely exercising his First Amendment rights. *See, e.g. Houston v. Hill*, 482 U.S. 451, 107 S.Ct. 2502, 96 L.Ed.2d 398 (1987); *Hess v. Indiana*, 414 U.S. 105, 94 S.Ct. 326, 38 L.Ed.2d 303 (1973); *Gooding v. Wilson*, 405 U.S. 518, 92 S.Ct. 1103, 31 L.Ed.2d 408 (1972); *Cohen v. California*, 403 U.S. 15, 91 S.Ct. 1780, 29 L.Ed.2d 284 (1971); *Street v. New York*, 394 U.S. 576, 89 S.Ct. 1354, 22 L.Ed.2d 572 (1969).

Under the present circumstances of the record, we find, although for different reasons than the district court, that the district court's decision to deny the defendant's motion for summary judgment on the basis of qualified immunity to stand trial should be affirmed.

## EXCESSIVE FORCE

▉▉▉ Gainor's excessive force claim should be analyzed in light of the objective reasonableness standard articulated in *Graham v. Connor*, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989).[12] The Court in *Graham* discussed several factors which may aid in the determination of objective reasonableness, including "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396, 109

11. In denying summary judgment, the court below found that the officer did not make a *"Terry* stop." As Judge Doty reasoned:

In the present case Rogers' initial encounter with Gainor did not constitute a seizure for purposes of the fourth amendment. Rogers merely approached Gainor and asked to see Gainor's identification. Gainor was free to refuse to answer any of the questions that Rogers put to him. He was also free to leave at any time during this initial encounter. Instead, he chose to stay and pursue his discussion with Rogers. Moreover, he specifically requested an opportunity to speak with Rog-

ers' superior, then asked Rogers to call his superior, and waited without objection until Minnie arrived. At this point Gainor's conversation with the officers was merely a consensual encounter which does not implicate fourth amendment protections.

*Gainor v. Rogers*, No. 4–90–187, at 10 (D.Minn. Feb. 5, 1991) (order denying motion for summary judgment).

12. Defendant Rogers urges that the qualified immunity rule applies as well to plaintiff's claim for excessive force. This issue is similarly resolved against the defendant under the same rationale governing the alleged unlawful arrest.

S.Ct. at 1872. We agree with the district court's analysis of these factors as applied to Gainor's claim. Gainor's alleged misconduct was neither violent nor serious. There is little evidence to indicate that Gainor posed a physical threat to anyone, and there is a factual dispute as to whether he was "actively" resisting arrest. Viewed in the light most favorable to Gainor, a genuine issue of fact exists as to the reasonableness of the force used against Gainor to secure his arrest.

With respect to Gainor's final claim, the district court found that Gainor's First Amendment rights were clearly implicated by the facts of this case. We agree. The First Amendment protects the right to convey religious messages in public forums. *See Heffron v. International Society for Krishna Consciousness*, 452 U.S. 640, 101 S.Ct. 2559, 69 L.Ed.2d 298 (1981). Not only did the act of carrying a large wooden cross by itself suggest Gainor's intent to express a religious message, it is undisputed that Gainor explained his religious mission to Rogers. The First Amendment also protects Gainor's right to verbally challenge the police officers' actions. *See City of Houston v. Hill*, 482 U.S. 451, 461, 107 S.Ct. 2502, 2509, 96 L.Ed.2d 398 (1987) ("The First Amendment protects a significant amount of verbal criticism and challenge directed at police officers."); *Norwell v. City of Cincinnati*, 414 U.S. 14, 94 S.Ct. 187, 38 L.Ed.2d 170 (1973). To the extent Gainor claims he was arrested solely for spreading a religious message in a manner the officers found "bizarre,"[13] or for challenging the officers' right to demand production of identification, there remains on the merits of this claim genuine issues of material fact.

We affirm the district court's denial of defendant's summary judgment motion based upon assertions of qualified immunity. We likewise affirm the district court's denial of the defendant's motion for summary judgment on plaintiff's claims for false arrest, false imprisonment and use of excessive force, as well as plaintiff's claim

for violation of his First Amendment rights.

LOKEN, Circuit Judge, dissenting.

I respectfully dissent. I believe the majority opinion pays only lip service to the defense of qualified immunity in this close case, the very kind of case for which the defense was intended. I conclude that defendants are entitled to qualified immunity as a matter of law on Gainor's unlawful arrest and First Amendment claims. I would remand his excessive force claim for further consideration of the qualified immunity issue prior to trial.

To ensure that qualified immunity provides effective protection against unnecessary litigation risk and expense, the Supreme Court has adopted a standard of objective reasonableness—public officials are entitled to qualified immunity when their "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Qualified immunity is a question of law that "ordinarily should be decided by the court long before trial." *Hunter v. Bryant*, —— U.S. ——, 112 S.Ct. 534, 537, 116 L.Ed.2d 589 (1991).

However, freedom from unnecessary trials is not the only purpose served by the qualified immunity defense; it also shields the public servant from unwarranted damage liability:

> [P]ermitting damages suits against government officials can entail substantial social costs, including the risk that fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties.

*Anderson v. Creighton*, 483 U.S. 635, 638, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987). Therefore, the procedures for determining the qualified immunity defense must be carefully tailored to meet its dual purposes of preventing unnecessary trials *and* protecting public officials from damage liability for objectively reasonable conduct.

---

**13.** Appellee's App. at 64 (deposition of Scott Rogers).

The Supreme Court has not yet fully addressed these procedural issues, but it has provided substantial guidance in a passage that the majority quotes but then largely ignores:

> [I]t should first be determined whether the actions [plaintiff] allege[s] ... are actions that a reasonable officer could have believed lawful. If they are, then [defendant] is entitled to dismissal prior to discovery. If they are not, and if the actions [defendant] claims he took are different from those [plaintiff] allege[s] (and are actions that a reasonable officer could have believed lawful), then discovery may be necessary before [defendant's] motion for summary judgment on qualified immunity grounds can be resolved.

*Anderson v. Creighton*, 483 U.S. at 646 n. 6, 107 S.Ct. at 3042–43 n. 6. For purposes of applying this standard to Gainor's claims, I conclude that, except for the excessive force claim, the relevant facts in this case are neither complex nor disputed.

*Unlawful Arrest.* This claim should not survive the pleading stage of the *Anderson v. Creighton* standard because Gainor has alleged "actions that a reasonable officer could have believed lawful." Gainor's Amended Complaint alleged:

> 13. Rogers ... indicated Plaintiff was guilty of solicitation and threatened to arrest Plaintiff if his demands for identification were not met.

If Rogers believed he had reasonable suspicion to stop Gainor to investigate unlawful soliciting, as Gainor alleges, then Rogers was entitled to employ the "least intrusive [investigative methods] reasonably available to verify or dispel the officer's suspicion in a short period of time." *Florida v. Royer*, 460 U.S. 491, 500, 103 S.Ct. 1319, 1325, 75 L.Ed.2d 229 (1983). *See United States v. Willis*, 967 F.2d 1220 (8th Cir. 1992). Surely, the least intrusive method to investigate possible unlawful soliciting is to ask for identification.[1]

If Rogers was reasonable in making an investigative stop and in asking Gainor for identification as part of that reasonable investigation, the lawfulness of the arrest turns on the narrow issue the Supreme Court expressly left open in *Brown v. Texas*, 443 U.S. 47, 53 n. 3, 99 S.Ct. 2637, 2641 n. 3, 61 L.Ed.2d 357 (1979): "whether an individual may be punished for refusing to identify himself in the context of a lawful investigatory stop which satisfies Fourth Amendment requirements." That question was unsettled at the time and remains unsettled today; thus, Gainor has failed to allege a violation of clearly established law that would "convert the common law tort of false arrest or false imprisonment to a violation of a constitutional right." *Edwards v. Baer*, 863 F.2d 606, 607 (8th Cir. 1989).

The majority simply ignores the pleading stage of the *Anderson v. Creighton* inquiry. Then, in analyzing the discovery record, the majority gives a deceptively cramped summary of Rogers's deposition testimony as to the objective circumstances that led him to stop Gainor and ask for identification. *See* page 1387, *supra.* Rogers testified:

> Q. Okay. We've talked about intoxication. We've talked about the fact that you saw pedestrians having to go around him and his cross and we've talked about the fact that you thought he may be a nuisance by stopping people, correct?
>
> A. That's correct.
>
> Q. Anything else that concerned you as a police officer prior to you asking Mr. Gainor his name?
>
> A. Yes.
>
> Q. What?
>
> A. The passing out of these pieces of paper, pamphlets or whatever they were.

\* \* \* \* \* \*

*Hughes,* 940 F.2d 1125, 1127 (8th Cir.1991). Even Gainor admitted in his deposition testimony, "if I was actually being investigated for something, then perhaps they did have a grounds to stop and check me out."

---

1. It is no answer to say, as the majority does, that Rogers did not acquire any evidence of illegal soliciting after he stopped Gainor. *See* note 4, *supra.* Rogers was not required to accept what Gainor told him. *See United States v.*

Q. What about the passing out of these pieces of paper concerned you, Officer?

A. I wondered what their content was and the possibility of him soliciting. . . .

Q. What do you mean by soliciting?

A. Receiving funds for passing out without a permit.

Q. Is that illegal in this city?

A. I believe there's a permit required.

Q. So the possibility of intoxication, the nuisance of pedestrians going around his cross, the potential for soliciting, and what else prompted you to stop him now? We've talked about a number of different things.

A. Overwhelming concern for public safety was my—

Q. You saw him as a threat to the public safety?

A. A possible threat, yes.

Q. A possible threat. Up to the time that you asked him his name, did you have any reason to believe he had done anything illegal?

A. Yes.

Q. What?

A. Being a public nuisance.

Rogers's above-quoted deposition testimony is entirely consistent with Gainor's complaint. Thus, there are no disputed issues of fact here *if* the focus is properly limited to whether Officer Rogers could have reasonably believed that his conduct did not violate clearly established law.

Moreover, other portions of the discovery record confirm that Rogers's conduct was objectively reasonable, even if his arrest of Gainor did overstep Fourth Amendment bounds. In June 1988, Gainor was arrested in Kootenia, Idaho. In July 1989, he was arrested in Winthrop Harbor, Illinois, and Glendale, Wisconsin.[2] All three of these arrest reports reflect circumstances virtually identical to Gainor's encounter

with Rogers and the Moorhead police. Thus, in a span of thirteen months, police officers in four different States concluded that the same conduct warranted Gainor's arrest. "As the qualified immunity defense has evolved, it provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986). It is clear that Rogers was neither in this case. Therefore, I cannot reconcile the majority's denial of qualified immunity on this discovery record with *Anderson v. Creighton* and *Hunter v. Bryant.*

*First Amendment.* The majority concludes that the motion for summary judgment on this claim must be denied because Gainor's assertion that he was arrested "solely for spreading a religious message" raises a genuine issue of material fact. But a defendant's motives are irrelevant to the qualified immunity issue. As the Supreme Court said in *Harlow,* "bare allegations of malice should not suffice," 457 U.S. at 817, 102 S.Ct. at 2738; and again in *Anderson,* "Anderson's subjective beliefs about the search are irrelevant," 483 U.S. at 641, 107 S.Ct. at 3040. Thus, the majority's analysis is plainly contrary to the controlling law of qualified immunity.

There is an issue lurking here that the Supreme Court has not yet addressed: if the plaintiff's constitutional claim is based upon the defendant's bad motives (as it typically is in First Amendment cases), and if the undisputed facts demonstrate that the defendant had an objectively reasonable basis for his conduct, can this alleged bad motive defeat summary judgment on qualified immunity grounds? The Supreme Court was able to avoid this issue in *Siegert v. Gilley,* —— U.S. ——, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991), because the majority found no constitutional violation.[3]

---

**2.** Rogers obtained this information from public records because Gainor refused to answer in discovery any inquiries about his numerous prior encounters with law enforcement officials. With the objective reasonableness of Rogers's conduct at issue, this refusal was a flagrant abuse of the discovery process.

**3.** In a concurring opinion, Justice Kennedy addressed the qualified immunity issue and resolved it by adopting a "heightened pleading standard," —— U.S. at ——, 111 S.Ct. at 1795. However, the "rub" in close cases tends to come at the fact-finding rather than at the pleading stage, so I suspect the Supreme Court will need to take up this issue again.

I would not reach the issue here because Gainor has presented no evidence that Rogers's conduct was motivated by Gainor's religious activities. This case turns on whether Rogers was objectively reasonable in stopping Gainor and then in arresting him for refusing a request for identification. The fact that Gainor purported to be engaged in religious activity does not affect (or at most negligibly affects) whether Rogers was reasonable in suspecting Gainor of unlawfully soliciting and creating a public nuisance.

*Excessive Force.* The majority relies upon *Graham v. Connor,* 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989), for its resolution of this issue. The problem is that *Graham* was decided after Rogers's conduct in question. The facts surrounding this claim are hotly disputed, and qualified immunity after *Graham* remains unsettled. *See* the various opinions in *Hammer v. Gross,* 932 F.2d 842 (9th Cir.1991) (en banc). Accordingly, I would remand this issue for further consideration consistent with the procedural standard of *Anderson v. Creighton.*

To conclude, in *Anderson v. Creighton,* the Supreme Court held that this court had unduly restricted the qualified immunity defense by defining "clearly established law" too broadly. Today, the majority adopts an even more hostile approach to the defense, limiting it to cases in which "the officer asserted conduct which would give rise to probable cause." Page 1384, *supra.* Under this standard, the defendant must prove a defense on the merits to be entitled to qualified immunity. Such a standard is inconsistent with *Anderson v. Creighton, Hunter v. Bryant, Harlow v. Fitzgerald,* and other controlling Supreme Court cases. I dissent.