_____

No. 95-1515
_____

Chris Veneklase; Paul B. Mehl;      *
Darold Larson; Nancy Emmel;         *
Jessica Uchtman,  *
                                    *
            Appellees,              *
                                    *
    v.                              *  Appeal from the United States
                                    *  District Court for the
City of Fargo; David Todd;          *  District of North Dakota
Jim Schalesky; Jon Holman;          *
Wayne Jorgenson, Sergeant,          *
City of Fargo Police                *
Department,                         *
                                    *
            Appellants.             *
                             _____

              Submitted:  October 18, 1995

                 Filed:  March 6, 1996
                             _____

Before WHITE, Associate Justice (Ret.),* and McMILLIAN and LOKEN,
      Circuit Judges.
                             _____

McMILLIAN, Circuit Judge.

     The City of Fargo and several of its police officers, Officer David
Todd, Officer Jim Schalesky, Lieutenant Jon Holman, and
Sergeant Wayne Jorgenson (collectively defendant officers) appeal from a
final order entered in the United States District Court for the District
of North Dakota granting partial summary judgment to Chris Veneklase, Paul
Mehl, Darold Larson, Nancy Emmel, and Jessica Uchtman (collectively
plaintiffs) under 42 U.S.C. § 1983. Veneklase v. City of Fargo, No. A3-93-
156 (D. N.D. Feb. 17, 1995).

_____

     *The Honorable Byron R. White, Associate Justice of
     the United States Supreme Court, (Ret.), sitting by
     designation, pursuant to 28 U.S.C. § 294(a).

Plaintiffs are anti-abortion protestors who were arrested by the defendant officers pursuant to the Fargo Residential Picketing Ordinance (ordinance) after demonstrating outside the home of the administrator of a medical facility in Fargo which provides abortion services. The district court held that the defendant officers were not entitled to qualified immunity and that the City was also liable because it had been deliberately indifferent in failing to train its police force. For reversal, the defendant officers argue the district court erred in holding that they were not entitled to qualified immunity; the City argues the district court erred in holding it liable under 42 U.S.C. § 1983 for deliberately failing to train its police officers. For the reasons discussed below, we reverse that part of the district court order denying qualified immunity, decline to consider the appeal of the City for want of appellate jurisdiction, and remand the case to the district court for further proceedings consistent with this opinion.

## I.  Background

On the evening of October 10, 1991, plaintiffs engaged in a demonstration outside the administrator's residence. They walked back and forth, in single file, on the sidewalk in front of the administrator's home, but their route included approximately two to three houses on either side of the administrator's residence. In addition, one protester remained in front of the administrator's home at all times. Plaintiffs remained silent and carried no signs. In response to a complaint, the defendant officers arrived and informed the demonstrators that their actions violated the ordinance.[1] The officers thereafter arrested those persons who

---

[1]The Fargo Residential Picketing Ordinance in effect on October 10, 1991, provided:

> 10-801.  Definitions. -- For purposes of this article, certain words and phrases used herein are defined as follows:
>
> 1.  "Dwelling" means any structure or building, or dwelling unit within a building, which is used as a place of residence.
>
> 2.  "Picketing" means the practice of

refused to leave (plaintiffs in this action, with the exception of one protester, a minor).  Although plaintiffs were charged with violating the ordinance, these charges were later dismissed by the county court judge.

On October 7, 1993, plaintiffs instituted this 42 U.S.C. § 1983 suit in the United States District Court for the District of  North Dakota, alleging, inter alia, that the defendant officers and the City had violated their First Amendment right to freedom of speech and their Fourth Amendment right not to be arrested without probable cause.[2]  On February 17, 1995, in response to the parties cross-motions for summary judgment, the district court entered a Memorandum and Order in which it concluded that the City and the defendant officers were liable to plaintiffs for violation of their First and Fourth Amendment rights.[3]  The district court rejected

---

standing, marching, or patrolling by one or more persons inside or, in front, or about any premises for the purpose of persuading an occupant of such premises or to protest some action, attitude, or belief.

10-802.  Picketing of dwellings prohibited. -- No person shall engage in picketing the dwelling of any individual in the City of Fargo.

Fargo Municipal Code, arts. 10-801 to 10-802 (1985).  On February 1, 1993, the City revised the ordinance to prohibit "targeted residential picketing" and defined what kinds of activity constituted "targeted residential picketing."  The amended ordinance, which this court considered in Kirkeby v. Furness, 52 F.3d 772, 774 (8th Cir. 1995), is not at issue in the present case.

[2]In addition to their § 1983 claim, plaintiffs also alleged state law claims of malicious prosecution, false arrest, and false imprisonment.

[3]The district court granted partial summary judgment in favor of the defendant officers and the City on all state law claims and claims for punitive damages.  Slip op. at 48-49.

the defendant officers' claim of qualified immunity and also held that the City had been deliberately indifferent to the rights of plaintiffs in failing to train its police force. Slip op. at 35, 43. The defendant officers and the City timely filed this appeal.

## II. Discussion

### A. Qualified Immunity

As a threshold matter, we must determine whether we have jurisdiction over the appeal of the defendant officers. In a "qualified immunity" case, a district court's denial of summary judgment constitutes a final appealable order to the extent that it turns on "abstract issues of law." Johnson v. Jones, 115 S. Ct. 2151, 2158 (1995). By contrast, a district court's pretrial rejection of a proffered qualified immunity defense is not immediately reviewable if the issue on appeal is whether the pretrial record is sufficient to create a genuine issue of material fact. Id. at 2158-59; see also Mitchell v. Forsyth, 472 U.S. 511, 526-30 (1985) (district court order denying defendant's motion for summary judgment was immediately appealable collateral order where defendant was public official seeking qualified immunity and where issue appealed concerned whether or not certain given facts showed violation of "clearly established" law). In the present case, however, the district court denied the defendant officers' motion for summary judgment on the basis that plaintiffs had a clearly established right to picket in a residential neighborhood and that a reasonable officer under the circumstances in the present case could not have believed the arrests of plaintiffs were lawful. Slip op. at 27-35. Because these issues are legal, rather than factual, and because the facts required to determine whether the defendant officers are entitled to qualified immunity are not genuinely in dispute, we have jurisdiction.

Government officials performing discretionary functions may rely on the defense of qualified immunity to shield them from liability for civil damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). See also Malley v. Briggs, 475 U.S. 335, 341 (1986) (qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law"). In order for a right to be clearly established, its contours "must be sufficiently clear that a reasonable person would understand that what he [or she] is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987) (Anderson).

The district court first concluded that plaintiffs had alleged a violation of a constitutional right in contending that the officers had arrested them for picketing on public sidewalks and streets. Slip op. at 27. The district court then determined that, in light of Frisby v. Schultz, 487 U.S. 474, 482-84 (1988) (Frisby), plaintiffs had a clearly established right to picket in the manner at issue in the present case. In Frisby, the Supreme Court upheld the residential picketing ordinance of Brookfield, Wisconsin[4] by interpreting its language as prohibiting only "focused picketing taking place solely in front of a particular residence." Frisby, 487 U.S. at 483-88. Concluding that the Court's narrowing construction in Frisby defined the standard for analogous cases, the district court found that plaintiffs had a clearly established right to picket outside the administrator's residence and adjacent houses on October 10, 1991. Slip op. at 30-32. The district court further held that no reasonable officer under the particular circumstances could have believed that

---

[4]The Brookfield residential picketing ordinance, which is virtually identical to the Fargo ordinance, provided: "It is unlawful for any person to engage in picketing before or about the residence or dwelling of any individual in the Town of Brookfield." Frisby, 487 U.S. at 477.

plaintiffs' arrests were lawful, in light of clearly established law and the information the defendant officers possessed. Slip op. at 33-35 (citing Gainor v. Rogers, 937 F.2d 1379, 1384 (8th Cir. 1992)). Thus, the district court determined that the defendant officers were not entitled to qualified immunity under 42 U.S.C. § 1983.

On appeal, the defendant officers argue that the district court erred in holding that plaintiffs had a clearly established right to picket along a route encompassing the Bovard home and the two to three houses on either side of it. They maintain that some uncertainty remains after Frisby as to what constitutes "focused" residential picketing. The defendant officers further contend that, even if Frisby clearly established such a right, a reasonable officer would not have known, on October 10, 1991, that the arrests of plaintiffs violated their First and Fourth Amendment rights. Brief for Appellants at 13, 24-25. Because we agree that plaintiffs did not have a clearly established right after Frisby to picket as they did on October 10, 1991, we hold that the defendant officers are entitled to qualified immunity.

In Frisby, the Supreme Court held that the type of residential picketing prohibited by the Brookfield ordinance -- that is, focused picketing taking place solely in front of a particular residence -- was "fundamentally different from more generally directed means of communication that may not be completely banned in residential areas." Frisby, 483 U.S. at 486. The Court therefore determined that the Brookfield ordinance struck an appropriate balance between, on the one hand, the State's interest in protecting residential privacy and, on the other hand, the plaintiff's First Amendment right to freedom of speech. See id. at 483-88. Some questions remain after Frisby, however, as to the meaning of "focused picketing taking place solely in front of a

-6-

particular residence." See id. at 483.[5]  It may be that where, as in the present case, at least one protester remains in front of the targeted residence at all times, the fact that other protesters march in front of several houses adjacent to the targeted dwelling does not diminish the "focused" character of the picketing.  But cf. Vittitow v. City of Upper Arlington, 43 F.3d 1100, 1107 (6th Cir. 1995), cert. denied, 115 S. Ct. 2276 (1995) (striking down as unconstitutionally overbroad residential picketing ordinance identical to that in Frisby and rejecting argument proffered by city that ordinance was violated whenever one residence could be discerned as the target of picketing).  Whether protesters may, consistent with the Frisby holding, include houses adjacent to the targeted dwelling on the picketing route, is an issue which we need not resolve

_____

[5]The questions regarding the scope of "focused" residential picketing were well-recognized by the Seventh Circuit when it considered Frisby on remand:

> We appreciate the plaintiff's concern that it is hard to tell when picketing is 'directed at' a particular home.  Will it be enough to go 'round and 'round the block?  Could the picketers march in front of the five houses on either side of the [targeted residence]?  May they stop for one minute, or two, or five, in front of the [targeted residence] . . . before moving along . . . ?  No matter how clear the ordinance seems, a hundred nice questions may follow in its wake . . . .

Schultz v. Frisby, 877 F.2d  6, 8 (7th Cir. 1989).

-7-

today, yet it is a significant question which lingers after <u>Frisby</u>.[6]  Thus, upon a careful reading of <u>Frisby</u>, we do not

_____

[6]In <u>Madsen v. Women's Health Center, Inc.</u>, 114 S. Ct. 2516, 2529-30 (1994) (<u>Madsen</u>), the Supreme Court struck down a state court injunction prohibiting anti-abortion protestors from picketing within 300 feet of the residences of abortion clinic staff.  <u>Id.</u> at 2529-30.  The Court held that the 300-foot buffer zone around staff residences swept more broadly than necessary to protect residential privacy, because it would ban general marching through residential neighborhoods, or even walking a route in front of an entire block of houses.  Nevertheless, the Court recognized a difference between generally applicable ordinances and injunctions, stating that ordinances "represent a legislative choice regarding the promotion of particular societal interests," whereas injunctions are "remedies imposed for violations (or threatened violations) of a legislative or judicial decree."  <u>Id.</u> at 2524.  This distinction, the Court reasoned, "require[d] a somewhat more stringent application of general First Amendment principles in this context."  <u>Id</u>.  Although the qualified immunity issue before us concerns whether plaintiffs had a clearly established right on October 10, 1991, to picket as they did in front of the administrator's home, we note that <u>Madsen</u> left unresolved the question whether an ordinance may prohibit individuals from picketing in front of the homes adjacent to a targeted residence.

find that its holding defined the outer parameters of "focused" residential picketing.  We hold that plaintiffs did not have a clearly established right on October 10, 1991, to picket in a route encompassing the Bovard residence and the two to three homes on either side of it.  We further hold that the arrest of plaintiffs by the defendant officers was objectively reasonable in light of the legal rules in existence at the time the action occurred.  See Anderson, 483 U.S. at 640.  We therefore conclude that the defendant officials are entitled to qualified immunity under 42 U.S.C. § 1983.

**B.    Municipal Liability**

For reversal, the City argues that the district court erred in holding that (1) the  City's training program was inadequate to train its police officers to properly enforce the residential picketing ordinance, (2) the City's failure to train its police officers evidenced a "deliberate indifference" to plaintiffs' rights, and (3) the City's failure to train its police officers was a moving force behind the constitutional violation alleged by plaintiffs.  See City of Canton v. Harris, 489 U.S. 378, 388 (1989) (adopting "deliberate indifference" standard of municipal liability for failure-to-train claims under 42 U.S.C. § 1983); Monell v. New York City Dep't of Social Serv., 436 U.S. 658, 694 (1978) (limiting

municipal liability under 42 U.S.C. § 1983 to actions occurring pursuant to official policy or custom).

We conclude, however, that the interlocutory appeal of the City is not properly before us, in light of Swint v. Chambers County Comm'n, 514 U.S. ___, ___, 115 S. Ct. 1203, 1208 (1995) (Swint). In Swint, the Supreme Court held that the Court of Appeals had lacked jurisdiction to review on interlocutory appeal the district court's denial of summary judgment to the Chambers County Commission in a suit brought under 42 U.S.C. § 1983. Id. at 1207-12. The Court first noted that the district court order denying the County Commission's summary judgment motion was not appealable as a collateral order. See id. at 1208; see also Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 546 (1949) (decisions which are conclusive, which resolve important questions apart from the merits of the underlying action, and which are effectively unreviewable on appeal from final judgment may be appealed immediately as collateral orders). The Court held that although the Court of Appeals had jurisdiction to review immediately the denial of summary judgment to individual police officer defendants on qualified immunity grounds, it lacked "pendent party" appellate jurisdiction to review contemporaneously the unrelated question of the County Commission's liability. See Swint, 115 S. Ct. at 1212. Nevertheless, the Court stated that, "[w]e need not definitively or preemptively settle here whether or when it may be proper for a court of appeals with jurisdiction over one ruling to review, conjunctively, related rulings that are not themselves independently appealable." Id.

This court applied Swint in Kincade v. City of Blue Springs, 64 F.3d 389, 394-95 (8th Cir. 1995) (Kincade). In Kincade, several city officials sought review of a denial of their motion for summary judgment on the plaintiff's § 1983 claim; the plaintiff had alleged that the city officials had violated his First Amendment rights by discharging him from his employment as the City Engineer

because of certain statements he had made regarding the construction of a local dam. Id. at 393. We considered whether, on interlocutory review of a denial of the defendants' summary judgment motion, we had pendent appellate jurisdiction to consider the defendants' claims that (1) the plaintiff's speech was not constitutionally protected and (2) the plaintiff had failed to establish that his speech caused his termination. We concluded that after Swint, pendent appellate jurisdiction would be appropriate over claims that are "inextricably intertwined" with interlocutory appeals concerning the defense of qualified immunity. See id. at 394. Thus, we held that we could review the defendants' claim that plaintiff's speech was not constitutionally protected, because that claim was "coterminous with, or subsumed in" the qualified immunity issue; by contrast, we lacked pendent appellate jurisdiction to consider the defendants' causation argument, which presented questions significantly different from the qualified immunity issue. See id. at 395.

Applying our reasoning in Kincade to the present case, we conclude that the interlocutory appeal of the City is not "inextricably intertwined" with the question whether the defendant officers are entitled to qualified immunity. Because resolution of these two issues requires entirely different analyses, we hold that the question whether the City is liable under 42 U.S.C. § 1983 for failing to train its police force is not "coterminous with, or subsumed in" the qualified immunity issue. Id. Thus, we decline to address the appeal of the City.[7] See Swint, 115 S. Ct. at 1212; Kincade, 64 F.3d at 395. We are confident, however, that the district court will now reconsider its ruling as to the City in

_____

[7]The defendant officers and the City additionally argued that the district court erred in holding as a matter of law that the residential picketing ordinance was unconstitutional as applied in the present case. Because this issue is not necessary to a disposition of the questions before us today, we need not consider it.

light of our resolution of the qualified immunity issue, particularly our determination that plaintiffs' arrest was objectively reasonable.

We hold that the defendant officers are entitled to qualified immunity and that the appeal of the City is not properly before us at this stage of the proceedings. Accordingly, we reverse the judgment of the district court insofar as it denied qualified immunity to the defendant officers, decline to reach the City's appeal for want of appellate jurisdiction, and we remand the case to the district court for further proceedings consistent with this opinion.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.