Chris **VENEKLASE**, Paul B. Mehl, Darold Larson, Nancy Emmel, and Jessica Uchtman, Plaintiffs,

v.

**CITY OF FARGO**; Officer David Todd, Officer Jim Schalesky, Lt. Jon Holman, and Sgt. Wayne Jorgenson, of the City of Fargo Police Department, Defendants.

Civ. No. A3–93–156.

United States District Court,
D. North Dakota,
Southeastern Division.

Feb. 17, 1995.

Thomas W. Condit, Condit & Dressing Co., LPA, Cincinnati, OH, Peter B. Crary, Fargo, ND, for plaintiffs.

Mike Miller, Solberg, Stewart, Miller, Johnson & Noack, Fargo, ND, for defendants.

### MEMORANDUM AND ORDER

KLEIN, United States Magistrate Judge.

On October 8, 1993, plaintiffs Chris Veneklase, Paul B. Mehl, Darold Larson, Nancy Emmel and Jessica Uchtman filed this civil action against defendants Officer David Todd, Officer Jim Schalesky, Lt. Jon Holman, Sgt. Wayne Jorgenson and the City of Fargo seeking redress for alleged violations arising out of the unconstitutional enforcement of Fargo Municipal Code § 10–0802. Plaintiffs' complaint sets forth four causes of action based on federal constitutional and state law theories. Pending before the court are defendants' motion for summary judgment, plaintiffs' motion for partial summary judgment and plaintiffs' motion for oral argument on the pending motions.

### I. BACKGROUND

Prior to October 10, 1991, the City of Fargo enacted a residential picketing ordinance which provided as follows:

10–0801. Definitions.—For purposes of this article, certain words and phrases used herein are defined as follows:

1. "Dwelling" means any structure or building, or dwelling unit within a building, which is used as a place of residence.

2. "Picketing" means the practice of standing, marching, or patrolling by one or more persons inside of, in front, or about any premises for the purpose of persuading an occupant of such premises or to protest some action, attitude or belief....

10–0802. Picketing of dwellings prohibited.—No person shall engage in picketing the dwelling of any individual in the City of Fargo....

Fargo Municipal Code § 10–0801 and § 10–0802 (1985) (amended Feb. 1, 1993). This ordinance is similar to an ordinance enacted in Brookfield, Wisconsin. The Brookfield ordinance, which was upheld by the United States Supreme Court in *Frisby v. Schultz,* contains a flat ban on targeted residential picketing, providing: "It is unlawful for any person to engage in picketing before or about the residence or dwelling of any individual in the Town of Brookfield." *Frisby v. Schultz,* 487 U.S. 474, 477, 108 S.Ct. 2495, 2498, 101 L.Ed.2d 420 (1988).

On the evening of October 10, 1991, plaintiffs participated in a public prayer vigil [1] in the residential neighborhood of Jane Bovard, administrator of the Women's Health Organization.[2] Plaintiffs and ten to fifteen other

---

1. In their Statement of Facts in Dispute, defendants assert that they "do not know whether Plaintiffs were engaging in prayer when they picketed the Bovard residence between 9:30 and 10:30 p.m." (Defs.' Statement of Facts in Dispute at 1). However, in his police report of the incident, Lt. Holman stated: "It appeared [plaintiffs and other participants] were praying/meditating. Some of the protestors were walking with their hands folded and some were carrying rosary beads." (App. to Pls.' Mot. for Partial Summ. J. at 25–26). The distinction between picketing and praying is apparently important to plaintiffs because they contend that their activities do not fall within the definition of "picketing" as set forth in Fargo Municipal Code § 10–0801. For the purposes of analyzing plaintiffs' claims, the court will assume, without deciding, that plaintiffs' activities on the evening of October 10, 1991, fall within the definition of "picketing" under Fargo Municipal Code § 10–0801.

2. Jane Bovard's address is 2820 Edgewood Drive, Fargo, North Dakota.

individuals convened in Bovard's neighborhood between the hours of 9:30 p.m. and 10:30 p.m. and began walking north and south on a public sidewalk in front of Bovard's residence and five to eight other homes. The prayer participants/demonstrators walked single file, spacing themselves several feet apart. They moved continuously, carried no signs, remained silent, and limited their activities to public streets and sidewalks on Edgewood Drive. Plaintiffs did not stop in front of Bovard's residence or any other home in the neighborhood and they did not block or impede access to or from private property.

The Fargo Police Department received a complaint about residential picketing in Bovard's neighborhood and Officers Wayne Jorgenson, David Todd and Lt. Jon C. Holman responded to the call. The officers observed the prayer participants/demonstrators for approximately ten minutes before Holman approached plaintiffs and the other participants and asked them to discontinue their activities. Holman discussed the issue with Veneklase for several minutes. During their conversation, Veneklase allegedly explained that the participants were not picketing, they were simply engaging in prayer. Veneklase also claimed that he had read the Fargo antipicketing ordinance and that he did not believe that plaintiffs' conduct fell within the scope of the ordinance. Lt. Holman allegedly indicated that he was broadly interpreting the Fargo antipicketing ordinance and that plaintiffs would be arrested if they continued their activities.[3] Veneklase then allegedly conveyed the substance of this conversation with Holman to the other participants and a number of the people decided to leave. Plaintiffs refused to suspend their activities so defendants arrested them for picketing in a residential neighborhood.[4]

The police officers transported plaintiffs to the Cass County Jail and held Veneklase, Mehl, Larson and Emmel overnight because they refused to pay a $50 bond. Plaintiff Uchtman, a minor at the time of her arrest, was detained for only a few hours and then released to her parents.

The City of Fargo filed charges in Cass County District Court against plaintiffs Veneklase, Mehl, Larson and Emmel for violating Fargo Municipal Code § 10–0802. The City did not file charges against Uchtman. On February 18, 1992, the Honorable Frank L. Racek dismissed the charges against plaintiffs, ruling that the picketing ordinance was constitutional on its face, but unconstitutional as applied to plaintiffs and the other individuals who participated in the prayer vigil/demonstration near the Bovard residence on October 10, 1991.[5] Plaintiffs then filed this action seeking redress for the allegedly unconstitutional enforcement of Fargo's residential picketing ordinance.

## II. *SUMMARY JUDGMENT MOTIONS*

### A. SUMMARY JUDGMENT STANDARDS

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.Pro. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). "A dispute is genuine when 'the evidence is such that a reasonable jury could return a verdict for the non-moving party.'" *Westchem Agr. Chemicals, Inc. v. Ford Motor Co.*, 990 F.2d 426, 429 (8th Cir.1993) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)). Rule 56 of the Federal Rules of Civil Procedure "mandates the entry of summary judgment ... against a party failing to make a

---

**3.** Defendants contend that "Lieutenant Holman did not indicate that he was giving 'broader interpretation' to the ordinance, however, he did ask the picketers to discontinue their activities and, when they refused, he did place them under arrest." (Defs.' Statement of Facts in Dispute at 2).

**4.** "Lieutenant Holman, the officer in charge at the scene, indicated that one factor he used in determining if protesters were engaging in un-

lawful activity was the time of the day that the picketing occurred." (Defs.' Statement of Facts in Dispute at 2).

**5.** Defendants note that pro-life demonstrators picketed in Fargo residential areas after the Cass County Court issued its opinion, but Fargo police officers made no additional arrests pursuant to the residential picketing ordinance.

showing sufficient to establish the existence of an element essential to that party's case." *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552. The court considering a motion for summary judgment must view the evidence in the light most favorable to the nonmoving party who enjoys "the benefit of all reasonable inferences to be drawn from the facts." *Vacca v. Viacom Broadcasting of Missouri, Inc. et al.,* 875 F.2d 1337, 1339 (8th Cir.1989) (citation omitted). Summary judgment is improper if the court finds a genuine issue of material fact; however, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment...." *Commercial Union Insurance Co. v. Schmidt,* 967 F.2d 270, 271–72 (8th Cir.1992) (citation omitted). The issue is whether the evidence submitted presents a sufficient disagreement about the material facts so that submission to a jury is required, or whether the evidence is so one-sided that a party must prevail as a matter of law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52, 106 S.Ct. 2505, 2511–12, 91 L.Ed.2d 202 (1986).

## B. PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

On September 15, 1994, plaintiffs filed a motion for partial summary judgment requesting this court to decide all questions of law relating to the constitutionality of Fargo Municipal Code § 10–0802 as written and as applied to plaintiffs' conduct on October 10, 1991. Specifically, plaintiffs urge this court to find that defendants violated plaintiffs' federal constitutional rights and to find that defendants were acting under color of state law and their acts were performed pursuant to the official policies and customs of the City of Fargo, thereby giving rise to liability for damages under 42 U.S.C. § 1983. (Pls.' Compl. at 6–7). Accordingly, plaintiffs request that this court enter judgment in their favor on the first and second causes of action set forth in their complaint.

### 1. Fargo Municipal Code § 10–0802 is Constitutional on its Face.

■ Fargo Municipal Code § 10–0802, like the antipicketing ordinance reviewed by the United States Supreme Court in *Frisby v. Schultz,* operates at the core of the First Amendment because it prohibits demonstrators from picketing on an issue of public concern. *See Frisby v. Schultz,* 487 U.S. 474, 479, 108 S.Ct. 2495, 2499–2500, 101 L.Ed.2d 420 (1988). "There can be no doubt that in prohibiting peaceful picketing on the public streets and sidewalks in residential neighborhoods, [the Fargo ordinance] regulates expressive conduct that falls within the First Amendment's preserve." *Carey v. Brown,* 447 U.S. 455, 460, 100 S.Ct. 2286, 2289–90, 65 L.Ed.2d 263 (1980) (citations omitted). In light of our nation's profound commitment to the principle that debate on public issues should be "uninhibited, robust, and wideopen", the United States Supreme Court has "traditionally subjected restrictions on public issue picketing to careful scrutiny." *Frisby,* 487 U.S. at 479, 108 S.Ct. at 2499 (citations omitted). Likewise, the First Amendment right to peaceable assembly is equally essential to "the security of the Republic, the very foundation of constitutional government." *Thomas v. Collins,* 323 U.S. 516, 530, 65 S.Ct. 315, 322–23, 89 L.Ed. 430 (1945);[6] *DeJonge v. Oregon,* 299 U.S. 353, 365, 57 S.Ct. 255, 260–61, 81 L.Ed. 278 (1937).

■ A picketer's right to demonstrate is not unlimited, however. *Id.* "[E]ven protected speech is not equally permissible in all places and at all times." *Id.* at 479, 108 S.Ct. at 2499 (citation omitted). In defining the limits on protected speech, the United States Supreme Court has often focused on the nature of the forum the speaker seeks to

---

6. The Court in *Thomas v. Collins* stated:

It is therefore in our tradition to allow the widest room for discussion, the narrowest range for [free speech] restriction, particularly when this right is exercised in conjunction with peaceable assembly. It was not by accident or coincidence that the rights to freedom in speech and press were coupled in a single

guaranty with the rights of the people peaceably to assemble and to petition for redress of grievances. All these, though not identical, are inseparable. They are cognate rights, and therefore are united in the First Article's assurance.

*Thomas v. Collins,* 323 U.S. 516, 530, 65 S.Ct. 315, 323, 89 L.Ed. 430 (1945) (citations omitted).

employ. For example, in *Perry Education Association v. Perry Local Educators' Association*, the Court ruled that the rights of the State to restrict expressive activity in places traditionally devoted to assembly and debate, such as public sidewalks, is sharply circumscribed. *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45, 103 S.Ct. 948, 954–55, 74 L.Ed.2d 794 (1983). In this case, plaintiffs limited their demonstration to public streets and sidewalks in a residential neighborhood. The *Frisby* Court clarified that "a public street does not lose its status as a traditional public forum simply because it runs through a residential neighborhood." *Frisby*, 487 U.S. at 480, 108 S.Ct. at 2500. Therefore, the constitutionality of Fargo Municipal Code § 10–0802 must be judged against the stringent standards established to test restrictions on speech in traditional public fora:

'In these quintessential public for[a], the government may not prohibit all communicative activity. For the State to enforce a content-based exclusion it must show that its regulation is necessary to serve a compelling state interest and that it is narrowly drawn to achieve that end.... The State may also enforce regulations of the time, place, and manner of expression which are content-neutral, are narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication.'

*Id.* at 481, 108 S.Ct. at 2500 (quoting *Perry*, 460 U.S. at 45, 103 S.Ct. at 954–55).

Since it is clear that plaintiffs were picketing in a traditional public forum, the next issue the court must consider is whether the Fargo ordinance is content-neutral. *See Frisby*, 487 U.S. at 481, 108 S.Ct. at 2500–01 ("As *Perry* makes clear, the appropriate level of scrutiny is initially tied to whether the statute distinguishes between prohibited and permitted speech on the basis of content."). Plaintiffs argue that Fargo Municipal Code § 10–0802 is unconstitutional on its face because it is content-based. Although the United States Supreme Court in *Frisby*

found that an ordinance worded almost identically to the Fargo antipicketing ordinance was facially constitutional, plaintiffs contend that the Fargo ordinance is unconstitutional on its face because the definition section of Fargo Municipal Code § 10–0801(2) favors certain types of speech over others. Section 10–0801(2) defines picketing as "the practice of standing, marching, or patrolling by one or more persons inside of, in front, or about any premises for the purpose of persuading an occupant of such premises or to protest some action, attitude or belief...." Fargo Municipal Code § 10–0801 (1985). Plaintiffs argue that the definition section, when considered in context with the antipicketing ordinance, impermissibly distinguishes between messages intended to inform and messages intended to persuade. Since the ordinance permits speakers to convey some messages while forbidding other messages, plaintiffs contend that it is content-based and thus unconstitutional on its face.[7]

▮ In First Amendment free speech cases such as the case at hand,

[t]he principal inquiry in determining content neutrality ... is whether the government has adopted a regulation of speech because of disagreement with the message it conveys. The government's purpose is the controlling consideration. A regulation that serves purposes unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some speakers or messages but not others. Government regulation of expressive activity is content neutral so long as it is "justified without reference to the content of the regulated speech."

*Ward, et al. v. Rock Against Racism*, 491 U.S. 781, 791, 109 S.Ct. 2746, 2754, 105 L.Ed.2d 661 (1989) (citations omitted). The principal justification for and primary state interest served by the Fargo antipicketing ordinance is protection of the tranquility and

---

7. Plaintiffs appear to argue that a content-specific ordinance is invalid *per se*. This argument ignores the principle that the content-based statute may be upheld if the state can show that the

"regulation is necessary to serve a compelling state interest and that it is narrowly drawn to achieve that end." *Perry*, 460 U.S. at 45, 103 S.Ct. at 955.

privacy of the home.[8] This purpose/interest "'ha[s] nothing to do with content,' and it satisfies the requirement that time, place, or manner regulations be content neutral." *Id.* at 792, 109 S.Ct. at 2754 (quoting *Boos v. Barry,* 485 U.S. 312, 320 (1988)). *See also Madsen, et al. v. Women's Health Center, Inc.,* —— U.S. ——, ——, 114 S.Ct. 2516, 2524, 129 L.Ed.2d 593 (1994) ("That petitioners all share the same viewpoint regarding abortion does not in itself demonstrate that some invidious content- or viewpoint-based purpose motivated the issuance of the order."). The court acknowledges that the antipicketing ordinance at issue in this case may have an incidental effect on some speakers or messages. However, since Fargo's purposes for promulgation of the ordinance are unrelated to the content of the expression it seeks to regulate, the court finds that the ordinance is content-neutral.[9] Since the Fargo antipicketing ordinance is content-neutral, the proper test to apply in evaluating the constitutional validity of the picketing ban is whether the ordinance is "'narrowly tailored to serve a significant government interest' and whether it 'leaves[s] open ample alternative channels of communication.'" *Frisby,* 487 U.S. at 482, 108 S.Ct. at 2501 (quoting *Perry,* 460 U.S. at 45, 103 S.Ct. at 954–55).

■ Like the *Frisby* Court, this court will consider the precise scope of the ordinance before applying this balancing test. A re-view of the *Frisby* Court's analysis of the scope of the Brookfield ordinance may assist this court in construing the Fargo ordinance.

The ordinance reviewed in *Frisby* provided: "It is unlawful for any person to engage in picketing before or about the residence or dwelling of any individual in the Town of Brookfield." *Id.* at 477, 108 S.Ct. at 2498 (citation omitted). The district court and the court of appeals had described the Brookfield ordinance as one which banned "all picketing in residential areas." *Id.* at 482, 108 S.Ct. at 2501. Conversely, the United States Supreme Court determined that "the use of the singular form of the words 'residence' and 'dwelling' suggest[ed] that the ordinance [was] intended to prohibit only picketing focused on, and taking place in front of, a particular residence." *Id.* The Court noted that to the extent the lower courts endorsed a broader reading of the ordinance, they "ran afoul of the well-established principle that statutes will be interpreted to avoid constitutional difficulties." *Id.* at 483, 108 S.Ct. at 2501 (citations omitted). Under the Court's narrow reading of the Brookfield ordinance, the antipicketing ban was a limited one; "only focused picketing taking place solely in front of a particular residence is prohibited." *Id.*

The *Frisby* Court gathered support for its narrow reading of the ordinance from representations made by counsel for the Town of

---

**8.** Fargo Municipal Ordinance 2190, the ordinance that enacted article 10–12 of chapter 10 of the revised ordinances of 1965 of the City of Fargo (including Fargo Municipal Code §§ 10–0801 and 10–0802) relating to residential picketing, provides, in pertinent part:

Whereas, the protection and preservation of the home is the keystone of democratic government; and

Whereas, the public health and welfare and good order of the community require that citizens enjoy a feeling of well-being and tranquillity while in their homes; and

Whereas, it is imperative that when citizens are absent from their homes, they carry with them the sense of security inherent in the assurance that they may return to the enjoyment of their homes; and

Whereas, the practice of picketing before or about residences and dwellings causes emotional disturbance and distress to the occupants and has as its object, the harassing of such occupants; ...

Fargo Ordinance 2190 (adopted Feb. 1985).

**9.** In footnote 3 on page 9 of their brief in support of plaintiffs' motion for partial summary judgment, plaintiffs raise an equal protection claim under the Fourteenth Amendment. Plaintiffs argue that the definition of "picketing" set forth in Fargo Municipal Ordinance section 10–0801 is content-based and therefore violates plaintiffs' right to equal protection as well as their right to free speech.

The court is not persuaded by plaintiffs' argument. On its face, the ordinance prohibits picketing without regard to the cause being advanced. Furthermore, Fargo's purposes for promulgation of the ordinance are unrelated to the content of the expression it seeks to regulate. Since the ordinance does not discriminate among pickets based on the subject matter of their expression, plaintiffs' Fourteenth Amendment equal protection rights were not violated.

Brookfield. *Id.* The town indicated that it would take and enforce "a limited view of the 'picketing' proscribed by the ordinance.... General marching through residential neighborhoods, or even walking a route in front of an entire block of houses, is not prohibited by this ordinance." *Id.* (citations omitted).

Upon review of the antipicketing ordinance in this case and the principles set forth in *Frisby,* the court finds that Fargo Municipal Code § 10–0802 may be narrowly construed to avoid constitutional difficulties. The Fargo ordinance, like the Brookfield ordinance, uses the singular form of the word "dwelling," thereby indicating that the antipicketing ban is a limited one. Furthermore, the court finds that in order to avoid invalidation of the ordinance in its entirety, the court must construe the regulation to prohibit only picketing focused on, and taking place solely in front of, a particular residence.

Next, this court will consider whether the Fargo ordinance, as construed, leaves open ample alternative channels of communication. In considering this part of the balancing test, the Court in *Frisby* accepted the appellants' explanation that the limited nature of the picketing prohibition made it self-evident that ample alternative channels of communication remained:

> "Protesters have not been barred from the residential neighborhoods. They may enter such neighborhoods, alone or in groups, even marching.... They may go door-to-door to proselytize their views. They may distribute literature in this manner ... or through the mails. They may contact residents by telephone, short of harassment."

*Frisby,* 487 U.S. at 484, 108 S.Ct. at 2502 (citation omitted).

Similarly, this court finds that the Fargo antipicketing ordinance and accompanying definitions do not sweep all activities within reach of the ordinance. Pro-life demonstrators have not been barred from residential neighborhoods. They may enter Fargo neighborhoods, travel door-to-door, distribute literature in person or through the mail, and contact residents by telephone. The court is satisfied that the ordinance, as narrowed, leaves open alternative channels of communication.

The next issue this court must address is whether Fargo Municipal Code § 10–0802 serves a significant government interest. Defendants assert that the protection of the well-being, tranquility, and privacy of the home is the government interest served by the ordinance. (Defs.' Br. in Support of Defs.' Mot. for Summ. J. at 3–6; *see supra* note 7). The court agrees that the protection of residential privacy is, without question, a significant government interest.

Finally, this court must determine whether the Fargo antipicketing ordinance is narrowly tailored to serve the significant government interest in the protection of residential privacy. In other words, this court must decide whether the statute protects only unwilling recipients of the demonstrators' communication.

> A statute is narrowly tailored if it targets and eliminates no more than the exact source of the "evil" it seeks to remedy. A complete ban can be narrowly tailored, but only if each activity within the proscription's scope is an appropriately targeted evil.

*Frisby,* 487 U.S. at 485, 108 S.Ct. at 2503 (citation omitted). The Court in *Frisby* concluded that a complete prohibition of focused picketing taking place solely in front of a particular residence was necessary, and thus narrowly tailored:

> The type of focused picketing prohibited by the Brookfield ordinance is fundamentally different from more generally directed means of communication that may not be completely banned in residential areas. See, *e.g., Schneider [v. State of N.J.], supra,* [308 U.S. 147,] at 162–163 [60 S.Ct. 146, 151–152, 84 L.Ed. 155 (1939) ] (handbilling); *Martin [v. City of Struthers, Ohio], supra* [319 U.S. 141, 63 S.Ct. 862, 87 L.Ed. 1313 (1943) ] (solicitation); *Murdock v. Pennsylvania,* 319 U.S. 105 [63 S.Ct. 870, 87 L.Ed. 1292] (1943) (solicitation). See also *Gregory v. Chicago, supra* [394 U.S. 111, 89 S.Ct. 946, 22 L.Ed.2d 134 (1969) ] (marching). Cf. *Perry,* 460 U.S., at 45 [103 S.Ct., at 954–55] (in traditional public forum, "the government may not prohibit all communicative activity"). In

**1048**

such cases "the flow of information [is not] into ... household[s], but to the public." *Organization for a Better Austin v. Keefe*, 402 U.S. 415, 420 [91 S.Ct. 1575, 1578, 29 L.Ed.2d 1] (1971). Here, in contrast, the picketing is narrowly directed at the household, not the public. The type of picketers banned by the Brookfield ordinance generally do not seek to disseminate a message to the general public, but to intrude upon the targeted resident, and to do so in an especially offensive way. Moreover, even if some such picketers have a broader communicative purpose, their activity nonetheless inherently and offensively intrudes on residential privacy. The devastating effect of targeted picketing on the quiet enjoyment of the home is beyond doubt....

The First Amendment permits the government to prohibit offensive speech as intrusive when the "captive" audience cannot avoid the objectional speech.... The target of the focused picketing banned by the Brookfield ordinance is just such a "captive." ... Accordingly, the Brookfield ordinance's complete ban of that particular medium of expression is narrowly tailored.

*Frisby*, 487 U.S. at 486–88, 108 S.Ct. at 2503–04.

Like the *Frisby* Court, this court finds that Fargo Municipal Code § 10–0802, as construed, "is narrowly tailored to protect only unwilling recipients of the communications." *Id.* at 485–88, 108 S.Ct. at 2502–04. Picketing focused on, and taking place directly in front of, a particular residence is inherently offensive and intrudes on the privacy of the home. *Id.* "The resident [who is the target of focused picketing] is figuratively, and perhaps literally, trapped within the home, and because of the unique and subtle impact of such picketing is left with no ready means of avoiding the unwanted speech." *Id.* at 487, 108 S.Ct. at 2504. The Fargo ordinance, as narrowed, only seeks to eliminate the "evil" presented by unwelcome residential picketers who are demonstrating solely in front of one home. Accordingly, this court finds that the Fargo antipicketing ordinance is narrowly tailored to serve a substantial government purpose and that the ordinance, as narrowed, provides ample alternative channels of communication.

█ Plaintiffs also assert that the Fargo antipicketing ordinance is unconstitutionally vague because it would be difficult for an average person to know whether the purpose of any given message is to inform or to persuade or to protest. Plaintiffs also contend that the protest/persuade standard is ambiguous and therefore subject to arbitrary enforcement.

The United States Supreme Court in *Kolender v. Lawson* noted that "the void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender, et al. v. Lawson*, 461 U.S. 352, 357, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903 (1983) (citations omitted). A statute will be held void for vagueness if the conduct forbidden by it is so unclearly defined that persons "of common intelligence must necessarily guess at its meaning and differ as to its application." *Connally v. General Construction Co.*, 269 U.S. 385, 391, 46 S.Ct. 126, 127–28, 70 L.Ed. 322 (1926). "[B]ecause we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly." *Grayned v. City of Rockford*, 408 U.S. 104, 108, 92 S.Ct. 2294, 2298–99, 33 L.Ed.2d 222 (1972). "Although the doctrine focuses both on actual notice to citizens and arbitrary enforcement, ... the more important aspect of the vagueness doctrine 'is not actual notice, but the other principal element of the doctrine—the requirement that a legislature establish minimal guidelines to govern law enforcement.'" *Kolender*, 461 U.S. at 357–58, 103 S.Ct. at 1858 (quoting *Smith v. Goguen*, 415 U.S. 566, 574, 94 S.Ct. 1242, 1247–48, 39 L.Ed.2d 605 (1974)). "A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory applica-

tion." *Grayned,* 408 U.S. at 108–09, 92 S.Ct. at 2298–99 (footnote omitted).

Upon review of the provisions of the Fargo antipicketing ordinance, the court concludes that the Fargo ordinance sufficiently defines boundaries for citizens, police, juries, and appellate judges. *Grayned,* 408 U.S. at 109, 114, 92 S.Ct. at 2299, 2302 (citation and footnote omitted). Furthermore, the court finds that the ordinance, as narrowed, establishes minimal guidelines for law enforcement. Therefore, the court holds that Fargo Municipal Code § 10–0802 is not unconstitutionally vague.

In summary, this court finds that the Fargo antipicketing ordinance is constitutional on its face.

### 2. Fargo Municipal Ordinance 10–0802 is Unconstitutional as Applied.

█ Plaintiffs argue that defendants interpreted Fargo Municipal Code § 10–0802 to ban all residential picketing if the purpose of such demonstrations is to persuade an occupant of such premises or to protest some action, attitude or belief. According to plaintiffs, the City of Fargo's official policy for enforcing the ordinance disregarded the narrowing construction required by *Frisby.* Furthermore, plaintiffs contend that when the defendant police officers arrested plaintiffs pursuant to this policy, their application of the ordinance was unconstitutionally overbroad because plaintiffs' demonstration did not take place solely in front of a particular residence. Accordingly, plaintiffs argue that the antipicketing ordinance was unconstitutional as applied.

Fargo Municipal Code § 10–0802 provides: "No person shall engage in picketing the dwelling of any individual in the City of Fargo." When read in conjunction with § 10–0802 (definitions), the ordinance appears to ban all picketing initiated for the purposes of protesting some action or persuading an occupant of the dwelling picketed. Pursuant to *Frisby v. Schultz,* a total ban on residential picketing is unconstitutional. *Frisby,* 487 U.S. at 486, 108 S.Ct. at 2503. Therefore, in order to avoid constitutional difficulties, this court has construed the statute to prohibit only focused picketing taking place solely in front of a particular residence. Thus, the issue before this court is whether defendants properly applied the ordinance as narrowed.

On the evening of October 10, 1991, plaintiffs and the other demonstrators walked north and south on Edgewood Drive in front of Bovard's residence and five to eight other homes.[10] They did not limit their demonstration to one household. They disseminated a message to the public.

Furthermore, the manner in which they conveyed their message was neither unduly intrusive nor offensive. The demonstrators walked single file, spacing themselves several feet apart. They moved continuously, carried no signs, remained silent, and limited their activities to public streets and sidewalks. Plaintiffs did not stop in front of Bovard's residence or any other home in the neighborhood. They did not block or impede access to or from private property. Accordingly, the court finds that plaintiffs' demonstration, as described in the testimony and affidavits before the court, does not fall within the prohibition of the Fargo antipicketing ordinance as construed by this court.[11]

---

10. Defendants claim: "The protestors actually walked two or three houses south of Bovard's home, turned around and walked north back to the Bovard home and two or three houses north of her home where they again turned around and retraced their route. At all times at least one or more protestors were in front of Jane Bovard's home." (Defs.' Statement of Material Facts Not in Dispute at 2). Similarly, plaintiffs claim: "Plaintiffs moved continually up and down the public sidewalk past at least five and one half residences ... and possibly as much as six to eight residential lots ..., including Bovard's." (Pls.' Statement of Material Facts Not in Dispute at 2).

11. Like the Cass County Court, this court finds:

In the case involving the Veneklase Defendants, the actions of the picketers were also confined to the public sidewalk. They were parading over an area in excess of 130 yards. They were engaged in prayer as they walked, and carried no signs. There was no chanting or other disruptive behavior taking place. It is true that the administrator of the Fargo Women's Health Organization lived in one of the houses along the protesters' path, but such a

In this case, defendants gave undue emphasis to Fargo residents' privacy interest at the expense of plaintiffs' First Amendment rights. Cf. *Bolger, et al. v. Youngs Drug Products Corp.*, 463 U.S. 60, 83–84, 103 S.Ct. 2875, 2889–90, 77 L.Ed.2d 469 (1983) (Stevens, J., concurring in judgment) (In contrast to regulation of communications due to the ideas expressed, which "strikes at the core of First Amendment values, ... regulations of form and context may strike a constitutionally appropriate balance between the advocate's right to convey a message and the recipient's interest in the quality of his environment."). The court recognizes the state's substantial interest in protecting residential privacy and acknowledges that plaintiffs' conduct might have invaded the privacy of the residents on Edgewood Drive. *Frisby*, 487 U.S. at 487, 108 S.Ct. at 2503 ("even a solitary picket can invade residential privacy"). However, the court also finds that the degree of their intrusiveness was minor. Plaintiffs were silent. Their presence would have gone unnoticed unless the neighborhood residents looked out their windows or left their homes. Furthermore, there is no evidence in the record indicating that plaintiffs blocked access to a residence or interfered with domestic tranquility in any other manner. Accordingly, the court finds that the Fargo residential picketing ordinance as applied in this case eliminated more than the exact source of evil the city legislators sought to remedy.[12]

Defendants argue that a continuous line of picketers marching slowly in front of Bovard's home is the functional equivalent of the type of focused picketing described in *Frisby* and properly proscribed by the Town of Brookfield. (Br. in Support of Defs.' Mot. for Summ. J. at 4 (quoting *Vittitow v. City of Upper Arlington*, 830 F.Supp. 1077, 1081 (S.D.Ohio 1993), rev'd, 43 F.3d 1100 (6th Cir.1995))). "In short, the harm [Bovard] experienced during Plaintiffs' picketing rises to the level of harm resulting from the invasion of residential privacy described in *Frisby*." *Id.*

The court is not persuaded by defendants' argument. The *Frisby* Court clarified that the First Amendment permits the government to prohibit focused picketing. Specifically, the *Frisby* Court ruled that the Town of Brookfield could constitutionally prohibit *"focused picketing taking place solely in front of a particular residence."* *Frisby*, 487 U.S. at 483, 108 S.Ct. at 2501–02 (emphasis added). Plaintiffs' picketing extended well beyond one residence and they placed no particular emphasis on any individual dwelling. Furthermore, the manner in which they conducted their demonstration was as accommodating to residential privacy interests as any picket could be. Construing the Fargo ordinance to constitutionally prohibit plaintiffs' conduct would essentially render a citizen's right to picket in a Fargo residential neighborhood meaningless.

The defendant police officers arrested plaintiffs despite the fact that their picketing was silent, orderly and expansive. Accordingly, this court finds that when defendants

---

fact alone cannot be used to prohibit the Defendants' activity.

. . . . .

The path of the picketers was expansive, their conduct was orderly, they were on the public streets and sidewalk, and there is no evidence as to how many times they marched in front of any particular residence. The only evidence before the Court is that at any residence they only made "momentary" stops. There is no claim of excessive noise or any other threatening behavior.

The enforcement of Fargo's Picketing Ordinance against the Defendants in the above cases impermissibly infringed on their First Amendment rights. In these cases, although Fargo's ordinance is narrowly tailored, it was not narrowly applied.

*City of Fargo v. Copper, et al.*, No. CR–91–3466 & CR–91–3467, at 11, 13 (Cass County Ct., N.D., Feb. 18, 1992).

12. Defendants note that one factor defendant Holman considered in determining whether the protesters were engaging in unlawful activity was the time of the day that the demonstration occurred. (Defs.' Statement of Facts in Dispute at 2; Aff. of Jon Holman dated 9/13/94, at 2). Although the time of day may have been an appropriate fact to consider in deciding whether the plaintiffs were violating the residential picketing ordinance, it is neither the only factor nor an overriding factor. Upon review of all the circumstances, the court finds that plaintiffs were lawfully exercising their First Amendment rights and that defendants' enforcement of the Fargo ordinance was unconstitutionally overbroad.

arrested plaintiffs for violating Fargo Municipal Code § 10–0802, they enforced the ordinance in a manner that went beyond the scope of the narrowing construction set forth by this court and compelled by *Frisby.* Thus, the ordinance is overbroad as applied to plaintiffs. Defendants' enforcement of Fargo's antipicketing ordinance impermissibly infringed on plaintiffs' First Amendment rights.

■ Next, plaintiffs argue that defendants' arrest of plaintiffs was unreasonable under the Fourth Amendment. Therefore, plaintiffs claim that the defendant police officers are liable for unlawfully seizing plaintiffs.

In *Gainor v. Rogers,* the Eighth Circuit Court of Appeals stated: "It is fundamental that an arrest violates the Fourth Amendment when there exists no reasonable suspicion or probable cause that an individual is engaged in criminal activity. It is also fundamental that a lawful arrest may not ensue where the arrestee is merely exercising his First Amendment rights." *Gainor v. Rogers,* 973 F.2d 1379, 1387 (8th Cir.1992) (citations omitted). The court has previously found that plaintiffs were exercising their First Amendment rights when they were arrested. Thus, the sole question remaining is whether circumstances surrounding the arrest would have led a reasonable police officer to conclude that there was probable cause to believe that plaintiffs' conduct was unlawful.

> "In determining whether probable cause exists to make a warrantless arrest, a court will consider whether the totality of facts based on reasonably trustworthy information would justify a prudent person in believing the individual arrested had committed ... an offense. Probable cause is to be assessed in terms of the circumstances confronting a reasonably cautious police officer at the time of the arrest, and the arresting officer is entitled to consider the circumstances, including arguably innocent conduct, in light of his training and experience. '[T]he probability, and not a prima facie showing, of criminal activity is the standard of probable cause.'" (citations omitted).

*Myers v. Morris,* 810 F.2d 1437, 1455 (8th Cir.1987). Upon review of the circumstances of this case, the court finds that a reasonable police officer would have been aware of the Court's ruling in *Frisby v. Schultz* and would therefore have realized that plaintiffs were legitimately exercising their First Amendment rights on the evening of October 10, 1991. Thus, the court finds that the police officers did not have reasonable suspicion or probable cause to arrest plaintiffs. Accordingly, plaintiffs' seizure violated their Fourth Amendment rights.

Plaintiffs assert that if the court finds that the Fargo ordinance was unconstitutional on its face or as applied and that their arrest was therefore unlawful, they are entitled to summary judgment on the first and second causes of action alleged in their complaint. Plaintiffs would be entitled to summary judgment if defendants had not claimed that they were entitled to qualified immunity from liability and damages. However, since defendants plead this affirmative defense, the court will defer ruling on plaintiffs' motion for summary judgment until after it considers defendants' qualified immunity arguments.

## C. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### 1. Qualified Immunity

Defendants argue that they are entitled to qualified immunity because the information available to the police officers at the time of plaintiffs' arrest led them to believe (and would have led reasonable police officers to believe) that the picketers were directing their attention and efforts toward the home of Jane Bovard. Since picketing a residential dwelling is prohibited by Fargo Municipal Code § 10–0802, defendants assert that reasonable officers could have believed that plaintiffs' arrest was lawful.

In addition, defendants assert that controlling precedent does not clearly establish when a demonstrator may legally picket in a residential neighborhood. The Court in *Frisby v. Schultz* found that a Brookfield ordinance, similar to the Fargo residential picketing ordinance, was constitutional on its face when narrowly construed to ban "only

focused picketing taking place solely in front of a particular residence." *Frisby,* 487 U.S. at 483, 488, 108 S.Ct. at 2502. However, the Court did not provide practical guidance about the application of the ordinance beyond the limited scope addressed in the *Frisby* opinion. Therefore, defendants assert that the scope of the plaintiffs' First Amendment right to picket in a residential area was not clearly established under the circumstances presented in this case.

The purpose of the qualified immunity defense is to shield government officials who were exercising discretionary authority from civil damages liability, "as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson v. Creighton,* 483 U.S. 635, 638, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987) (citations omitted); *Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 2815–16, 86 L.Ed.2d 411 (1985). In *Latimore v. Widseth,* the Eighth Circuit Court of Appeals summarized the requirements of the qualified immunity defense as follows:

> The availability of the defense to an official exercising discretionary authority in a particular case requires careful consideration of the established law at the time, the state actor's objective knowledge of that law, and the complained-of conduct. "Qualified immunity protects a government official from suit if, at the time of the challenged acts, it was not clearly established that those actions would violate clearly established law of which a reasonable person would have known."

*Latimore v. Widseth,* 7 F.3d 709, 712 (8th Cir.1993) (citation omitted). The elements of the defense stated in a three-part inquiry are: (1) Has the plaintiff asserted a violation of a constitutional right? (2) Was the constitutional right allegedly violated clearly established? (3) Are there genuine issues of material fact regarding whether a reasonable officer would have known that his or her alleged conduct infringed on plaintiff's constitutional right? *Foulks v. Cole County, Mo.,* 991 F.2d 454, 456 (8th Cir.1993) (citations omitted).

In deciding whether defendants are entitled to qualified immunity, the first issue to resolve is whether plaintiffs have alleged a violation of a constitutional right. *Siegert v. Gilley,* 500 U.S. 226, 231–33, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277 (1991). In this case, plaintiffs contend that defendants violated their First, Fourth and Fourteenth Amendment rights when the defendant police officers arrested them for picketing on public sidewalks and streets. Public sidewalks have long been a place for public assembly and discourse. *Frisby,* 487 U.S. at 480–81, 108 S.Ct. at 2500–01. "In these quintessential public forums the government may not prohibit all communicative activity." *Id.* Furthermore, "a public street does not lose its status as a traditional public forum simply because it runs through a residential neighborhood." *Frisby,* 487 U.S. at 480, 108 S.Ct. at 2500. Accordingly, the court finds that plaintiffs have sufficiently alleged a violation of their constitutional rights.

The next issue is whether plaintiffs' constitutional right to picket in a residential neighborhood was clearly established. For purposes of qualified immunity, a right is clearly established if a reasonable official would understand that his or her conduct violates that particular right because the contours of the right are sufficiently clear. *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Id.*

The Court has previously invalidated complete bans on expressive activity in residential neighborhoods. *Frisby,* 487 U.S. at 480, 485, 108 S.Ct. at 2500, 2502. In doing so, the court recognized that public streets and sidewalks, even in residential neighborhoods, are the archetype of a traditional public forum and therefore restrictions on the use of this forum for picketing on an issue of public concern are subject to careful scrutiny. *Id.* at 479–81, 108 S.Ct. at 2499–2501. In *Frisby v. Schultz,* the court construed an ordinance almost identical to the Fargo antipicketing

ordinance to ban only focused picketing taking place solely in front of a particular residence. Although the judiciary may not have analyzed the Fargo ordinance for constitutional validity before this case, the court finds that the Supreme Court's decision in *Frisby* clearly established plaintiffs' right to picket in a Fargo residential neighborhood.

Defendants acknowledge that the *Frisby* Court provided guidelines for analyzing the facial validity of the Fargo ordinance, but argue that the *Frisby* decision did not define the scope of permissible picketing under the ordinance and therefore questions about the constitutional application of the ordinance still remain. In support of their argument, defendants note that the Seventh Circuit Court of Appeals, upon remand, commented that the *Frisby* Court left many questions unanswered:

> We appreciate the Plaintiff's concern that it is hard to tell when picketing is "directed at" a particular home. Will it be enough to go around and around the block? Could the picketers march in front of five houses on either side of the Victoria's? Make a stop for one minute, or two, or five, in front of the Victoria's place before moving on? Surely they can't evade the law by standing in front of the Victoria's home and occasionally jumping one house on either side. How much longer must the route be? No matter how clear the ordinance seems, 100 nice questions may follow its wake.

*Schultz v. Frisby,* 877 F.2d 6, 8 (7th Cir. 1989). Defendants also cite to the following passage from the *Frisby* decision: "[S]ince our First Amendment analysis is grounded in protection of the unwilling residential listener, the constitutionality of applying the ordinance to such hypothetical [situations] remains open to question." (Br. in Support of Defs.' Mot. for Summ. J. at 9 (quoting *Frisby,* 487 U.S. at 488, 108 S.Ct. at 2504)). In addition, defendants note that Judge Racek, the Cass County Court judge who dismissed the criminal charges against plaintiffs, admitted that the question of whether the Fargo ordinance was constitutional as applied to the circumstances in this case was troublesome. Since the *Frisby* Court did not provide any practical guidance about the application of the narrowly construed antipicketing ordinance, defendants argue that plaintiffs' constitutional right to picket under the circumstances of this case was not clearly established.

■ The court is not persuaded by defendants' arguments. It is not necessary for a litigant to demonstrate precise factual correspondence with precedents in order to prove that the law was clearly established for qualified immunity purposes. *Jones v. Coonce,* 7 F.3d 1359, 1362 (8th Cir.1993). "It is only necessary that the unlawfulness of the official's act is apparent in view of preexisting law." *Id.* The court finds that the unlawfulness of defendants' arrest of plaintiffs was apparent in light of *Frisby.* The similarity of the Brookfield and Fargo ordinances put defendants on notice that the Fargo ordinance was overbroad as written. The *Frisby* Court avoided constitutional difficulties presented by the Brookfield ordinance by construing the antipicketing ban to prohibit only focused picketing taking place solely in front of a particular residence. *Frisby,* 487 U.S. at 483, 108 S.Ct. at 2501–02. This narrowing construction clearly established the standard for analogous cases.[13] Defendants have not set forth any facts that convince this court that it should not narrowly construe the Fargo ordinance in the same manner that the Court narrowly construed the Brookfield ordinance in *Frisby.* To the contrary, it appears that the purpose for adopting the Fargo and Brookfield antipicketing ordinances and the state interests asserted by Town of Brookfield and the City of Fargo are nearly

---

**13.** The United States District Court in *Vittitow, et al., v. City of Upper Arlington,* 830 F.Supp. 1077 (S.D.Ohio 1993), *rev'd,* 43 F.3d 1100 (6th Cir. 1995), also recognized the precedential effect of *Frisby:*

> [I]n *Frisby,* unlike the instant case, the plaintiffs challenged the facial validity of the ordinance. The Court nevertheless finds the prin-

ciples enunciated in *Frisby* to be highly instructive in the instant case. In particular, the limitations the *Frisby* Court read into the Brookfield ordinance serve as a fair guide as to the extent to which defendants in the instant case may constitutionally enforce the Upper Arlington ordinance.

*Id.* at 1080.

identical. In addition, this court has found no special circumstances that would lead a reasonable officer to conclude that this case presented an exception to the principles discussed in *Frisby*. Therefore, the court finds that defendants should have known that *Frisby* compels a narrow construction of residential picketing ordinances, such as Fargo Municipal Ordinance § 10–0802, to prohibit only picketing focused on and taking place solely in front of a particular residence.

Furthermore, the court is not convinced that the circumstances in the case at hand present a close call with regard· to constitutional application of the statute. In order to save the ordinance from invalidation on constitutional grounds, the *Frisby* Court construed the Brookfield antipicketing ban to be a limited one. *Frisby*, 487 U.S. at 483, 108 S.Ct. at 2501. In reaching this decision, the Court was persuaded by counsel for the Town of Brookfield, who assured the Court that "[g]eneral marching through residential neighborhoods, or even walking a route in front of an entire block of houses was not prohibited by the ordinance." *Id.* The defendant police officers in this case observed the demonstrators for approximately ten minutes before approaching them and therefore knew the extent of their picketing route and manner of their demonstration. The picketers' route extended well beyond one particular residence. The picketers' conduct was orderly. The demonstration was limited to public property and the court is aware of no claims of excessive noise, blocked access or threatening behavior. If the officers had been properly trained about *Frisby* and its implications, the illegality of plaintiffs' arrest would have been obvious. Accordingly, the court finds that plaintiffs' constitutional right to picket in the manner described by plaintiffs in their affidavits and depositions was clearly established.

■ Allegations of a well-established constitutional right do not automatically defeat a motion for summary judgment on qualified immunity grounds, however. The qualified immunity defense may still be viable even when a plaintiff establishes the violation of a clearly established constitutional right, if the defendant can demonstrate the "objective legal reasonableness" of the policy or conduct in light of the legal principles that were "clearly established" at the time the alleged violation occurred. *Latimore*, 7 F.3d at 712 (citing *Anderson v. Creighton*, 483 U.S. 635, 639, 107 S.Ct. 3034, 3038–39, 97 L.Ed.2d 523 (1987)). "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson*, 483 U.S. at 640, 107 S.Ct. at 3039. Thus, the court must not only consider whether the right allegedly violated was clearly established, but must also consider whether the right was clearly established in these particular circumstances. *Id.* at 640–42, 107 S.Ct. at 3039–40. Although it may be clear that plaintiffs have a general right to picket on public sidewalks and streets, it may not be clear that defendants violated plaintiffs' constitutional rights when they arrested plaintiffs for picketing in a residential neighborhood on October 10, 1991.[14]

■ Furthermore, in a case in which the defense of qualified immunity is raised in response to an allegation of illegal arrest under the Fourth Amendment, the "focal issue is the objective reasonableness of the officer making the arrest, even though probable cause to arrest is lacking." *Gainor v.*

---

14. The court in *Myers v. Morris* noted:

In *Mitchell v. Forsyth*, for example, the fourth amendment right to be free from unreasonable searches was certainly clearly established when the attorney general ordered wiretaps. What was not clearly established was whether the specific conduct in the context indicated (warrantless wiretapping for domestic national security purposes) was clearly constitutionally proscribed. *See also Davis v. Scherer*, 468 U.S. 183 [199], 104 S.Ct. 3012, 3022, 82 L.Ed.2d 139 (1984) (Brennan, J., concurring in part and dissenting in part):

In order to determine whether a defendant has violated a plaintiff's clearly established rights, it would seem necessary to make two inquiries * ‡ *: (1) which particular act or omission of the defendant violated the plaintiff's federal rights, and (2) whether governing case or statutory law would have given a reasonable official cause to know, at the time of the relevant events, that those acts or omissions violated the plaintiff's rights.

*Myers v. Morris*, 810 F.2d 1437, 1459 n. 16 (8th Cir.1987).

*Rogers,* 973 F.2d 1379, 1382 (8th Cir.1992). The relevant question is whether a reasonable officer could have believed that plaintiffs' arrest was lawful, in light of clearly established law and the information the defendant police officers possessed. *Anderson v. Creighton,* 483 U.S. 635, 641, 107 S.Ct. 3034, 3039–40, 97 L.Ed.2d 523 (1987); *Gainor,* 973 F.2d at 1384. The latter phase of this test allows room for good faith mistake since the officer's "conduct must be measured in terms of the belief of a reasonable officer based upon the facts then available to the officer." *Gainor,* 973 F.2d at 1384. Naturally, an officer cannot claim qualified immunity if the officer based his or her decision to arrest on mere suspicion that unlawful conduct had occurred. But, "if the officer asserted conduct which would give rise to probable cause, this would, if undisputed, provide a defense of qualified immunity." *Id.*

■ In this case, the facts the court finds material to its decision are undisputed. Plaintiffs and ten to fifteen other individuals convened in Bovard's neighborhood between the hours of 9:30 and 10:30 p.m. and began walking north and south on a public sidewalk in front of Bovard's residence and at least five other homes. (Pls.' Statement of Material Facts Not in Dispute at 2; Defs.' Statement of Material Facts Not in Dispute at 2; Defs. Statement of Facts in Dispute at 1). The demonstrators walked single file, moved continuously, carried no signs, remained silent, and limited their activities to public streets and sidewalks on Edgewood Drive. (*Id.*). Plaintiffs did not stop in front of Bovard's residence or any other home in the neighborhood and they did not block or impede access to or from private property. (*Id.*). Defendant Holman, the officer who made the decision to arrest plaintiffs, observed their activity for approximately ten minutes,[15] long enough to recognize that plaintiffs' conduct was permissible in light of clearly established law. Therefore, the court concludes that a reasonable officer could not have believed the arrest was lawful. As noted above, the law clearly proscribed the arrest of plaintiffs for walking the picketing route alleged in their complaint. A reasonable police officer under the circumstances in this case could not have found that there was probable cause to arrest plaintiffs for violating Fargo's antipicketing ordinance. Accordingly, defendants are not entitled to qualified immunity. Defendants' motion for summary judgment on plaintiffs' first and second causes of action is denied. Plaintiffs' motion for partial summary judgment on their first and second causes of action is granted.

### 2. Liability of the City of Fargo

In their complaint, plaintiffs allege that the City of Fargo failed to train and advise its police officers and that this failure constituted deliberate indifference to plaintiffs' clearly established constitutional rights. In addition, plaintiffs claim that the City's failure to train and advise the officers was the direct and proximate cause of the deprivation of rights suffered by plaintiffs. Further, plaintiffs contend that the defendant police officers' conduct was authorized, sanctioned and ratified by city officials functioning at a policy-making level for the City of Fargo and that the police officers' actions were performed pursuant to official policies and customs of the City of Fargo.[16] Therefore,

---

**15.** (Pls.' Statement of Material Facts Not in Dispute at 3). Defendants did not dispute the ten-minute observation estimate.

**16.** In response to plaintiffs' first request for admissions, defendants admitted that the defendant police officers acted pursuant to the City's official policies, customs, practices, and procedures when they arrested plaintiffs. (Defs.' Response to Pls.' First Set of Request for Admissions, at 4). Defendants also admitted that the police officers acted pursuant to their training and instruction as City of Fargo police officers when they arrested plaintiffs. (*Id.* at 5). Plaintiffs argue that these admissions constitute ratification of the

defendant·police officers' unconstitutional conduct, automatically giving rise to municipal liability. This court is not persuaded by plaintiffs' argument. The court views the admissions signed by Raftevold as an acknowledgement that the defendant police officers acted pursuant to existing policies and training, none of which specifically addressed the enforcement of the antipicketing ordinance or the implications of *Frisby.* The admissions are not the equivalent of an affirmative decision, cast in the form of a policy statement, to ignore training deficiencies or completely omit training about the proper enforcement of the residential antipicketing ordinance. *See City of St. Louis v. Praprotnik,* 485 U.S. 112,

plaintiffs allege that the city is liable for plaintiffs' damages.

In response to these allegations, defendants filed a motion for summary judgment arguing that the claims against the City of Fargo should be dismissed because the City's alleged failure to properly train and supervise the police officers did not amount to deliberate indifference to the rights of the demonstrators.

Section 1983 to title 42 of the United States Code provides a remedy against every person who, under color of state law, deprives another of constitutionally protected rights. 42 U.S.C.A. § 1983 (1994). The United States Supreme Court in *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690, 98 S.Ct. 2018, 2035–36, 56 L.Ed.2d 611 (1978), found that Congress intended § 1983 to apply to municipalities and other local governmental entities. However, the Court in *Monell* and its progeny also noted that "a municipality can be found liable under § 1983 only where the municipality *itself* causes the constitutional violation at issue. *Respondeat superior* or vicarious liability will not attach under § 1983. 'It is only when the "execution of the government's policy or custom . . . inflicts the injury" that the municipality may be held liable under § 1983.'" *Canton v. Harris*, 489 U.S. 378, 385, 109 S.Ct. 1197, 1202, 103 L.Ed.2d 412 (1989) (citations omitted).

The evidence before the court indicates that the City of Fargo implemented no specific policies, procedures or guidelines for the enforcement of Fargo's antipicketing ordinance. (Depo. of Ronald Raftevold dated Apr. 18 & 20, 1994, at 10).

> And where there is no official statement respecting specific police conduct, it will be difficult if not impossible to imply an official municipal policy directly authorizing conduct at odds with federal and state constitutions and laws.
>
> Typically, therefore, claims of municipal liability for specific constitutional violations by police have had to seek municipal fault in other sources than direct authorizations by policymakers and the necessary causa-

tion between fault and violation in more attenuated connections than direct commands.

> Two basic theories have emerged for imposing municipal liability in the more typical situation where fault and causation cannot be laid to a municipal policy "itself unconstitutional." The principal theory locates fault in deficient programs of police training and supervision which are claimed to have resulted in constitutional violations by untrained or mis-trained police officers. A second theory, sometimes imprecisely subsumed within the first, locates fault in irresponsible failure by municipal policymakers to put a stop to or correct a widespread pattern of unconstitutional conduct by police officers of which the specific violation is simply an example.

*Spell v. McDaniel*, 824 F.2d 1380, 1388–89 (4th Cir.1987) (citations omitted). In this case, plaintiffs argue the principal theory. Specifically, plaintiffs allege that the City of Fargo failed to adequately train and advise its police officers.

 In *Canton v. Harris*, the United States Supreme Court held that the inadequacy of police training may serve as the basis for § 1983 liability, but "only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *Canton*, 489 U.S. at 388, 109 S.Ct. at 1204 (footnote omitted). In order to prove their claim under a failure to train or instruct theory of municipal liability, plaintiffs must establish the following three elements:

(1) The city's training program was inadequate. *Canton*, 489 U.S. at 390, 109 S.Ct. at 1205–06.

(2) The city's " 'failure to train its employees in a relevant respect evidences a "deliberate indifference" to the rights of the [plaintiffs].' " *Thelma D. by Delores A. v. Board of Educ.*, 934 F.2d 929, 934 (8th Cir.1991) (citation omitted). Specifically, plaintiffs must prove that the City of Fargo had notice that its training program was inadequate and

127–30, 108 S.Ct. 915, 926–28, 99 L.Ed.2d 107 (1988). Consequently, the court concludes that

municipal liability premised on a ratification theory does not flow from the City's admissions.

likely to result in a violation of constitutional rights. *Id.* The plaintiffs may establish that the City or its policymakers had notice of a deficiency in its training program or procedures in one of two ways:

A. "[N]otice may be implied where failure to train officers or employees is so likely to result in a violation of constitutional rights that the need for training is patently obvious." *Id.*

B. In situations where the need for training may not be obvious from the outset, "a pattern of constitutional violations could put the municipality on notice that its employees' responses to a regularly recurring situation are insufficient to protect the constitutional rights of its citizens. To establish deliberate indifference on such a claim, [plaintiffs] must show that the [City] had either actual or constructive notice of the inadequacy of its training program and failed to take remedial steps." *Id.* at 935.

(3) The City's failure to adequately train its police officers was a moving force behind the constitutional violation alleged by plaintiffs. *Canton,* 489 U.S. at 389, 109 S.Ct. at 1205; *Monell,* 436 U.S. at 694, 98 S.Ct. at 2037. In other words, "the identified deficiency in the city's training programs must be closely related to the ultimate injury." *Canton,* 489 U.S. at 391, 109 S.Ct. at 1206.

■ The first issue this court must consider is whether the City of Fargo's training program was inadequate to train its police officers to properly enforce the residential antipicketing ordinance. Chief of Police Ronald Raftevold, the top policymaking official responsible for the training and instruction of Fargo police officers,[17] testified that, to the best of his knowledge, there were no policies, procedures or guidelines for the enforcement of Fargo Municipal Code § 10–0802. (Depo. of Ronald Raftevold dated 4/18/94 and 4/20/94, at 10). The text of the

ordinance was the only guidance available to police officers charged with enforcing the ordinance. (*Id.* at 10–11). In addition, Raftevold acknowledged that he had not read *Frisby v. Schultz,* 487 U.S. 474, 108 S.Ct. 2495, 101 L.Ed.2d 420 (1988), and was not familiar with the contents or implications of the case prior to October 10, 1991. (*Id.* at 14–24, 30–43).

Furthermore, defendant Holman, the shift commander on the evening of October 10, 1991 and the officer who made the decision to arrest plaintiffs,[18] testified that he could recall no written policy for the enforcement of the Fargo residential antipicketing ordinance. (Depo. of Lt. Jon C. Holman dated 4/18/94, at 7, 20, 56–57, 63–64). He also testified that he could recall no specific verbal instructions given to Fargo police officers regarding the enforcement of the ordinance. (*Id.* at 7, 20, 56–57, 64). In addition, Holman testified that he had not heard about *Frisby* until after October 10, 1991 and had not received any training or instruction of any kind through the City of Fargo addressing the ruling in *Frisby* prior to plaintiffs' arrest. (*Id.* at 8–9).

Moreover, the court notes that testimony from Holman and Raftevold given in response to hypothetical questions during their depositions indicates that neither man understood the implications of *Frisby* before plaintiffs were arrested on October 10, 1991. (*Id.* at 45–57, 87–115; Depo. of Chief Ronald Raftevold dated 4/20/94, at 36–43).

Upon review of the facts listed above and other evidence submitted in support of pending motions, this court finds that no reasonable jury could conclude that the training and instruction provided by the City of Fargo was adequate to enable Fargo police officers to respond properly to the recurring residential picketing situations with which they had to deal.[19]

**17.** (Depo. of Ronald Raftevold dated 4/18/94 and 4/20/94, at 9–10).

**18.** (Depo. of Lt. Jon C. Holman dated 4/18/94 and 4/20/94, at 11, 13, 19–20, 81–82).

**19.** In their Statement of Facts in Dispute, defendants claim: "While there was not formal training and instruction of Fargo's police officers as

to the Fargo's residential picketing ordinance, there was informal training and instruction through police staff meetings and the like." (Defs.' Statement of Facts in Dispute at 2). Defendants proffered no evidence in support of this assertion. Pursuant to Rule 56 of the Federal Rules of Civil Procedure, defendants' statement, standing alone, is insufficient to withstand plain-

Next, the court must decide whether the City's failure to train its police officers evidences "deliberate indifference" to the rights of the plaintiffs. *Canton v. Harris*, 489 U.S. 378, 388, 109 S.Ct. 1197, 1204–05, 103 L.Ed.2d 412 (1989); *Thelma D. by Delores A. v. Board of Educ.*, 934 F.2d 929, 934 (8th Cir.1991) (citation omitted). In *Canton v. Harris*, the United States noted that plaintiffs can demonstrate deliberate indifference by establishing that "in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *Canton*, 489 U.S. at 390, 109 S.Ct. at 1205.

Fargo Municipal Code § 10–0802, as written, did not clearly notify the Fargo police officers about the narrowing construction compelled by *Frisby*.[20] Yet, the text of the ordinance was the only guidance available to police officers who were charged with enforcing the ordinance. Therefore, it was incumbent upon the city to instruct its police officers about the implications of this Supreme Court decision. Failure to instruct police officers that demonstrators could constitutionally picket in a residential neighborhood so long as their demonstration was not focused on and taking place solely in front of a single residence was almost certain to result in deprivation of constitutional rights anytime police officers were tasked with enforce-

ment of this ordinance. Accordingly, the court finds that the City's failure to train its police officers about the proper enforcement of the antipicketing ordinance was so likely to result in a violation of constitutional rights that the need for training was patently obvious. No reasonable jury could conclude otherwise. Notice of a deficiency in the City's training program must therefore be implied.

Finally, plaintiffs must demonstrate that the City of Fargo's failure to adequately train its police officers was a moving force behind the violation of plaintiffs' constitutional rights. Since there is no evidence that the police officers were motivated by a purpose other than bringing offenders to justice, the court finds that if the defendant police officers had known about the narrow construction compelled by *Frisby*, they would not have arrested plaintiffs. Thus, the deficiency in Fargo's training program was closely related to plaintiffs' injury. No reasonable jury could conclude that the City's failure to train the defendant police officers was not a cause of plaintiffs' constitutional injury. Accordingly, the City of Fargo is liable for plaintiffs' constitutional claims. Plaintiffs' motion for summary judgment is granted with respect to their municipal liability claims.

### 3. State Law Claims[21]

In their complaint, plaintiffs allege that defendants are liable for malicious prosecu-

tiffs' motion for summary judgment. Fed.R.Civ. Pro. 56(e).

20. Defendants claim that "there had been no legal challenge to Fargo's home picketing ordinance. There were no legal decisions interpreting the scope of the ordinance. No Court had held the ordinance unlawful and in fact, the United States Supreme Court in *Frisby* had held a similar ordinance to be constitutional." (Defs.' Br. in Support of Defs.' Mot. for Summ. J. at 15). Accordingly, defendants contend that the City of Fargo is not liable under § 1983. The court is not persuaded by defendants' arguments. The City of Fargo may not ignore a binding judicial opinion such as *Frisby* simply because the case did not specifically address Fargo Municipal Ordinance § 10–0802. The facts in *Frisby* were analogous and therefore its principles are binding.

21. Pursuant to 28 U.S.C. § 1367(a) and the Eighth Circuit Court of Appeals decision in *McLaurin v. Prater*, 30 F.3d 982, 985 (8th Cir. 1994), this court *must* accept supplemental jurisdiction over the state law claims in this action unless:
 (1) the claim raises a novel or complex issue of State law,
 (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
 (3) the district court has dismissed all claims over which it has original jurisdiction, or
 (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.
28 U.S.C. § 1367 (1994). Since this court concludes that none of the exceptions listed above apply to the circumstances of this case, it must accept jurisdiction over the state law claims alleged by plaintiffs.

tion and false arrest/false imprisonment under the laws of the State of North Dakota. Defendants filed a motion for summary judgment arguing that plaintiffs have failed to make a showing sufficient to establish the existence of two elements necessary to maintain an action for malicious prosecution: absence of probable cause for the proceeding and malice.

In order to maintain an action for malicious prosecution under North Dakota law, one must establish the following elements:

1. A criminal proceeding instituted or continued by the defendant against the plaintiff.

2. Termination of the proceeding in favor of the accused.

3. Absence of probable cause for the proceeding.

4. "Malice," or a primary purpose other that of bringing an offender to justice.

*Richmond v. Haney*, 480 N.W.2d 751, 755 (N.D.1992) (citations omitted). Upon review of the evidence, the court finds that plaintiffs have failed to make a showing sufficient to establish malicious intent. Plaintiffs neither responded to defendants motion for summary judgment on their state law claims nor submitted any evidence indicating that the defendant police officers were motivated by a purpose other than bringing offenders to justice. Mere allegations of malicious conduct are not enough to withstand defendants' motion for summary judgment. Fed.R.Civ.Pro. 56(e). Accordingly, the court finds that defendants are entitled to summary judgment on this state law cause of action.

Plaintiffs also allege that defendants are liable for false arrest/false imprisonment. In order to prove their claim, plaintiffs must demonstrate that they were subject to total restraint against their will by means of physical barriers or by threats of force which intimidated them into compliance with orders. W. Page Keeton et al., Prosser and Keeton on Torts § 11, at 47–53 (Hornbook Series, Lawyer's Edition, 5th ed. 1984). However, plaintiffs are not entitled to recover if the arrest is supported by proper legal authority. *Id.* Probable cause may also serve as a defense if it validates the arrest itself or if it justifies defense of person or property. *Id.*

Defendants do not contend that plaintiffs have failed to establish the elements of false arrest/false imprisonment. Instead, defendants assert that pursuant to section 32–12.1–03(3) of the North Dakota Century Code, they are immune from liability for plaintiffs' state law claims because the defendant police officers' decision to arrest plaintiffs for violating Fargo's antipicketing ordinance was discretionary.

Section 32–12.1–03(3)(c) sets forth the discretionary function exception to liability of a political subdivision.[22] The North Dakota Supreme Court has interpreted this subsection to provide political subdivisions and their employees immunity from liability for allegations of negligence in the exercise of a discretionary function. *Sande v. City of Grand Forks*, 269 N.W.2d 93, 98 (N.D.1978); *McLain v. Midway Township*, 326 N.W.2d 196, 199 (N.D.1982). However, political subdivision employees are not entitled to immunity from liability resulting from the exercise of a discretionary function if their acts or omissions constitute reckless or grossly negligent conduct, or willful or wanton miscon-

---

**22.** Section 32–12.1–03(3) provides, in pertinent part:

3. A political subdivision is not liable for any claim based upon an act or omission of an employee of a political subdivision, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance, exercising due care, or the failure to exercise or perform a discretionary function or duty on the part of a political subdivision or its employees, whether or not the discretion involved be abused.

Specifically, a political subdivision or an employee thereof is not liable for any claim which results from:

. . . . .

c. The decision to perform or the refusal to exercise or perform a discretionary function or duty, whether or not such discretion be abused and whether or not the statute, charter, ordinance, order, resolution, regulation, or resolve under which the discretionary function or duty is performed is valid or invalid.

N.D.Cent.Code § 32–12.1–03 (Supp.1993).

duct. N.D.Cent.Code § 32–12.1–04(3) (Supp. 1993).

■ Plaintiffs have not proffered any evidence of malicious intent, reckless or grossly negligent conduct, or willful or wanton conduct,[23] and the court finds no evidence of such conduct in the record. Therefore, defendants are immune from liability for plaintiffs' state law claims provided that defendants can demonstrate that Holman's decision to arrest plaintiffs was a discretionary function.[24]

Upon review of the circumstances of this case and the factors set forth in *Loran v. Iszler*, 373 N.W.2d 870, 873 (N.D.1985) (quoting Comment f to § 895D, Restatement (Second) of Torts), the court finds that Holman's conclusion that there was probable cause to arrest plaintiffs and his consequent decision to arrest plaintiffs was discretionary. There is a substantial amount of independent judgment required to make a decision to arrest or to conclude whether probable cause exists. *See Richmond v. Haney*, 480 N.W.2d 751, 759 (N.D.1992). Accordingly, defendants are immune from liability for plaintiffs' state law claims of malicious prosecution and false arrest/false imprisonment under section 32–12.1–03 of the North Dakota Century Code. Defendants' motion for summary judgment on plaintiffs' third and fourth causes of action is therefore granted.

### 4. Punitive Damages

Plaintiffs' prayer for relief includes a demand for punitive damages against defendants Holman, Todd, and Schalesky.[25] In response to this demand, defendants argue: "There is absolutely nothing in the Complaint nor in the facts of this case which

justify an award of punitive damages against the arresting officers. The request for punitive damages should be stricken from this proceeding." (Br. in Support of Defs.' Mot. for Summ. J. at 19). Plaintiffs did not respond to this argument.

■ "Punitive damages may be awarded in a section 1983 action when 'the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.'" *Duncan v. Wells*, 23 F.3d 1322, 1324 (8th Cir.1994) (citations omitted). "[W]hen the defendant has been guilty by clear and convincing evidence of oppression, fraud, or malice, actual or presumed, the court or jury, in addition to actual damages may give damages for the sake of example and by way of punishing the defendant." N.D.Cent.Code § 32–03.2–11 (Supp. 1993).

■ Upon review of the documents submitted in support of the cross motions for summary judgment, the court finds that plaintiffs have failed to make a showing sufficient to withstand defendants' motion for summary judgment on this issue. *See* Fed. R.Civ.Pro. 56. The court found no evidence indicating that defendants' acts were motivated by evil motive or intent or that their acts constitute oppression, fraud, malice or callous or reckless indifference to the rights of others. The evidence before this court is therefore insufficient to support a punitive damages award. Defendants' motion for summary judgment with respect to plaintiffs' demand for punitive damages is granted.

**IT IS ORDERED** that:

---

**23.** Plaintiffs did not file a response to defendants' request to dismiss their state law claims. Pursuant to Rule 56 of the Federal Rules of Civil Procedure, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R.Civ.Pro. 56(e).

**24.** Legislative history supports this interpretation of section 32–12.1–03. During the discussion of house bill 1071, the bill which lead to the enact-

ment of chapter 32–12.1, Mr. Russ Myhre of the Legislative Council stated that "generally, state or political subdivision officers and employees who exercise discretionary functions are immune from liability for their unintentional fault." Senate Judiciary Committee Discussion of House Bill 1071 at 2 (March 7, 1977).

**25.** Although a political subdivision may not be held liable for punitive damages, employees of a political subdivision may be held liable for punitive or exemplary damages. N.D.Cent.Code §§ 32–12.1–03(2) & 32–12.1–04(3) (Supp.1993).

1. Defendants' motion for summary judgment (doc. # 13) is granted with respect to plaintiffs' state law claims and plaintiffs' demand for punitive damages. Plaintiffs' third and fourth causes of action are therefore dismissed with prejudice. Defendants' motion for summary judgment (doc. # 13) is denied with respect to plaintiffs' federal constitutional claims against all defendants.

2. Plaintiffs' motion for partial summary judgment (doc. # 17) is granted.

3. Plaintiffs' request for oral argument on plaintiffs' motion for partial summary judgment (doc. # 19) is denied.